# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

THE NATIONAL FEDERATION OF          &ast;
THE BLIND
200 East Wells Street at Jernigan Place     &ast;
Baltimore, MD  21230,
                                            &ast;
And
                                            &ast;
THE COUNCIL OF PARENT ATTORNEYS
AND ADVOCATES, INC.                         &ast;
8 Market Place, Suite 300
Baltimore, MD  21202,                       &ast;

And                                         &ast;

NATIONAL ASSOCIATION FOR THE                &ast;
ADVANCEMENT OF COLORED PEOPLE, INC.
4805 Mt. Hope Drive                         &ast;       Civil Action No.:
Baltimore, MD  21215,
                                            &ast;
    Plaintiffs,
                                            &ast;
    v.                  &ast;

U.S. DEPARTMENT OF EDUCATION                &ast;
Lyndon Baines Johnson Dept. of Education Bldg.
400 Maryland Avenue, SW                     &ast;
Washington, D.C.  20202,
                                            &ast;
And
                                            &ast;
BETSY DEVOS
Secretary of Education                      &ast;
In Her Official Capacity
Lyndon Baines Johnson Dept. of Education Bldg.   &ast;
U.S. Department of Education
400 Maryland Avenue, SW                     &ast;
Washington, D.C. 20202,
                                            &ast;
And
                                            &ast;

CANDICE JACKSON                                            *
Acting Assistant Secretary for Civil Rights
In Her Official Capacity                                   *
U.S. Dept. of Education,
Office for Civil Rights                                    *
Lyndon Baines Johnson Dept. of Education Bldg.
400 Maryland Avenue, SW                                   *
Washington, D.C. 20202-1100,
                                                          *
             Defendants.
                                                          *

*      *      *      *      *      *      *      *      *      *      *      *      *      *

## SUPPLEMENTAL COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      COME NOW, Plaintiffs, The National Federation of the Blind, Inc., The Council

of Parent Attorneys and Advocates, Inc., and National Association for the Advancement of

Colored People, Inc., by and through their undersigned counsel and hereby bring this action against

Defendants, U.S. Department of Education, Betsy DeVos (Secretary of Education), and Candice

Jackson (Acting Assistant Secretary for Civil Rights), in their official capacities, and in support

thereof state as follows:

### INTRODUCTION

2.      The Office for Civil Rights ("OCR") within the U.S. Department of Education

("DOE") has a special mission: "to ensure equal access to education and to promote educational

excellence through vigorous enforcement of civil rights in our nation's schools."

https://www2.ed.gov/about/offices/list/ocr/aboutocr.html. This office serves "student populations

facing discrimination and the advocates and institutions promoting systemic solutions to civil

rights problems." *Id.*

3.      To fulfill its mission, OCR notes that "an important responsibility is resolving

complaints of discrimination." *Id.* Complaints of discrimination can be filed by anyone who

believes that an educational institution that receives federal financial assistance has discriminated

against someone on the basis of race, color, national origin, sex, disability, or age. The victim himself does not need to file – instead, an advocate or organization can file on an individual's behalf or on behalf of a group.  The ability to file a complaint and have it thoroughly reviewed is integral to the mission of the OCR.

4.      Indeed, some claims under the statutes enforced by DOE's OCR, such as those alleging disparate impact discrimination, can only be enforced by the federal government. *Alexander v. Sandoval*, 532 U.S. 275 (2001) (finding that implementing regulation of Title VI of the Civil Rights Act of 1964 regarding disparate impact discrimination is only enforceable by the federal funding agencies).

5.      Contrary to its mission and without any public notice, earlier this year DOE summarily eliminated substantive rights of the very people it purports to serve by changing its Case Processing Manual to abdicate its basic duty to investigate legitimate complaints of discrimination by students and their parents.

6.      Effective March 5, 2018, the DOE amended the U.S. Department of Education Office for Civil Rights Case Processing Manual ("2018 OCR Manual"). The changes include new provisions to require mandatory dismissal of certain complaints and the elimination of the appeal rights of complainants.

7.      Because these changes violate the federal Administrative Procedure Act ("APA"), 5 U.S.C. Chapter 5, §§ 551, *et seq*., and are contrary to OCR's mission, Plaintiffs, on their own behalf and on behalf of their members who are or may be victims of discrimination in the education system, ask the Court (1) to declare the amendments to the 2018 OCR Manual in violation of the law, (2) to enjoin Defendants from enforcing these new provisions of the 2018 OCR Manual, and (3) to set aside the changes

**PARTIES & JURISDICTION**

8.      The National Federation of the Blind, Inc. ("NFB") is the oldest and largest national organization of blind persons.  It is a 501(c)(3) non-profit corporation duly organized under the laws of the District of Columbia and headquartered at 200 East Wells Street at Jernigan Place, Baltimore, Maryland.  It has approximately 50,000 members and affiliates in all 50 states, Washington, D.C., and Puerto Rico.  The NFB and its affiliates are widely recognized by the public, Congress, executive agencies of state and federal governments, and courts as a collective and representative voice on behalf of blind Americans and their families. The organization promotes the general welfare of the blind by assisting the blind in their efforts to integrate themselves into society on terms of equality and by removing barriers that result in the denial of opportunity to blind persons in virtually every sphere of life, including education, employment, family and community life, transportation, and recreation.

9.      The ultimate purpose of the NFB is the complete integration of blind individuals into society on a basis of equality.  This objective includes the removal of legal, economic, and social discrimination.  As part of its mission and to achieve these goals, the NFB actively pursues administrative complaints and litigation to ensure that the blind receive equal access to the opportunities, facilities, services, programs and activities offered by public schools, institutions of higher education, and other recipients of federal financial assistance from DOE.  The NFB has filed complaints with OCR on behalf of its members in the past, has complaints pending with OCR at present, and expects to need to file complaints on behalf of its members in the future.

10.     For example, in 2009, the NFB filed several complaints with OCR and the Department of Justice against colleges and universities that were deploying inaccessible Amazon Kindle devices in classes.  See https://nfb.org/node/1129.  As a result of these complaints, the DOE

4

and Department of Justice reached resolution agreements with several colleges and universities prohibiting them from requiring, purchasing, or incorporating inaccessible electronic book readers in their curricula. See, e.g.,

https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more/11092094-b.html. The DOE and Department Justice followed these resolutions with a "Dear Colleague Letter" to all college and university presidents explaining that Section 504 and the Americans with Disabilities Act prohibit the use of emerging technologies in the classroom if the technologies are inaccessible to students with disabilities.

 https://www2.ed.gov/about/offices/list/ocr/letters/colleague-20100629.html.  DOE subsequently issued a Frequently Asked Questions document regarding the application of Section 504 to electronic book readers in elementary, secondary, and higher education. https://www2.ed.gov/about/offices/list/ocr/docs/dcl-ebook-faq-201105.html.  However, the 2018 OCR Manual, by its terms, would have mandated that OCR reject this "pattern" of complaints and would prevent investigation of such a "pattern" of complaints if they were filed today.

11.     NFB's members have been and are illegally discriminated against by educational institutions that receive federal funding.  Among the NFB's members are individuals against whom persons and entities receiving federal financial assistance from the DOE have illegally discriminated in the provision of services.  Many of the NFB's members have filed complaints with OCR on behalf of themselves, on behalf of their children, or on behalf of others.  Because discrimination against blind people, including blind children, is persistent and frequent, many of them have had to file more than one complaint.  For example, NFB members Joy and Paul Orton of Alabama, filed a complaint with OCR in 2016 on behalf of their child, who is blind, alleging that their local school district was discriminating on the basis of disability.  This meritorious complaint was resolved through a resolution agreement by OCR.  However, an additional instance

of discrimination has recently arisen and they have had to file another complaint with OCR, which is currently pending.  The 2018 OCR Case Processing Manual's provision requiring dismissal of complaints by individuals who have filed previously applies to them and interferes with their ability to advocate for their child's civil rights.

12.     In addition, as part of its mission, the NFB periodically submits comments on federal agencies' proposed rules and regulations to inform agencies about the impact of such proposals on the lives and rights of blind people.  For example, in 2017, the NFB submitted comments in response to DOE's request for comments regarding its evaluation of existing regulations pursuant to Executive Order 13777, Enforcing the Regulatory Reform Agenda. https://nfb.org/images/nfb/documents/pdf/nfb_response_ed_2017_os_0074.pdf.

13.     The Council of Parent Attorneys and Advocates, Inc. ("COPAA") is a national not-for-profit organization of parents of children with disabilities, their attorneys, and their advocates. COPAA's primary goal is to secure appropriate educational services for children with disabilities in accordance with federal law. COPAA provides resources, training, and information for parents, advocates, and attorneys to assist them in obtaining the equal opportunity for education such children are entitled to under the federal civil rights laws. COPAA frequently advises and trains parents, attorneys, and advocates about filing complaints with the DOE OCR, helps parents and advocates file administrative complaints on behalf of children with disabilities, helps parents and advocates find attorneys and legal resources as they advocate for their children's legal rights, educates policy makers, including federal agencies, about the educational experiences of children with disabilities and their families, and educates COPAA members about developments in the federal civil rights laws and policies affecting education of children with disabilities.

14.     COPAA's attorney members represent children with disabilities in civil rights matters, including complaints with the DOE's OCR.

15.     COPAA's members have been and are illegally discriminated against by educational recipients of federal funding.  For example, COPAA member Katie Kelly is a public interest lawyer in Florida who has filed complaints with OCR on behalf of students with disabilities and their parents to challenge discrimination under Section 504, and Titles VI and IX of the Civil Rights Act.  Her clients often cannot file complaints on their own behalf and cannot afford to pay an attorney.  The 2018 OCR Case Processing Manual's provision requiring dismissal of complaints by individuals who have filed previously applies to her and her clients and interferes with their ability to advocate for the civil rights of low-income children.

16.     Several COPAA members have informed COPAA that their complaints have already been subjected to dismissal and appeals have been denied pursuant to the 2018 OCR Manual.  Others have filed complaints with OCR in the past and are preparing to file, or expect to file, additional complaints in the near future.

17.     In addition, COPAA periodically submits comments on federal agencies' proposed rules and regulations to inform agencies about the impact of such proposals on the lives and rights of children with disabilities and their families.  For example, COPAA recently submitted comments in response to the DOE's Notice of Proposed Rulemaking published in the Federal Register on February 27, 2018, proposing to delay the compliance date for the 2016 final regulations implementing the Individuals with Disabilities Education Act (IDEA) requirement addressing significant disproportionality.

https://cdn.ymaws.com/www.copaa.org/resource/resmgr/docs/2018_documents/COPAA_on_Significant_Disprop.pdf.

18.     The National Association for the Advancement of Colored People, Inc. (NAACP), founded in 1909, is the nation's largest and oldest grassroots civil rights organization.  The NAACP is a 501(c)(3) non-profit organization headquartered in Baltimore, Maryland, with

approximately 2,200 chartered state-based, local, and collegiate units in all 50 states and on three military installations around the world. The mission of the NAACP is to ensure the political, educational, social, and economic equality of rights of all persons and to eliminate race-based discrimination.

19.     The NAACP has been at the forefront of many of the major civil rights advancements in our Nation. The NAACP fought to desegregate public schools throughout the American South, culminating with the seminal case, *Brown v. Board of Education of Topeka, KS*. A decade later, due largely to the vigorous advocacy of the NAACP and its leaders, Congress passed and President Johnson signed into law the Civil Rights Act of 1964.

20.     The NAACP continues to advocate for equality in public education, regardless of zip code, race, or ethnicity. The NAACP has submitted comments, usually as part of a coalition of civil rights organizations, urging modification of proposed Department of Education rules that would have negatively affected students of color, physically disadvantaged students, and young adults leaving from college with student loans.

21.     In addition, the NAACP has spent considerable resources educating its units and members across the country regarding the Every Student Succeeds Act ("ESSA") and its implementing regulations. Those units and members, in turn, have educated education officials to ensure that state plans under ESSA are designed to eliminate race-based inequality in public education and to provide a quality education for all students.

22.     The NAACP's members have been and are illegally discriminated against by educational recipients of federal funding. The NAACP and its state and local units have filed complaints with the DOE OCR when they believe the actions (or inaction) of school officials constitute violations of Title VI of the Civil Rights Act of 1964. For example, in 2016, the NAACP filed a complaint against the City of Richmond Public Schools on behalf of two African American

students with disabilities, and all African American students and students with disabilities, based on discriminatory discipline policies and practices. Then, in September 2017, the NAACP filed another complaint against Lee County Florida's school district, again alleging discriminatory policies and practices. The 2018 OCR Case Processing Manual's provision requiring dismissal of complaints would foreclose complaints like these.

23.     OCR's removal of the ability of a complainant such as the NAACP to file a series of complaints alleging similar misconduct by a number of different school systems across the country, its removal of the ability of complainants to file administrative appeals from closure of their complaints, and its requirement that even meritorious complaints be dismissed without investigation if they are believed to be administratively burdensome, negatively impact the NAACP and its units and members who wish to file complaints of race discrimination under Title VI of the Civil Rights Act of 1964.

24.     DOE OCR's implementation of these changes in the 2018 version of its Case Processing Manual, without notice or comment, prevented the NAACP and its units and members from learning of the planned changes before they took effect and informing DOE OCR why these changes are fundamentally inconsistent with the mission of DOE OCR and why they prevent organizations such as the NAACP from filing complaints based on patterns of misconduct occurring across different jurisdictions.

25.     Plaintiffs are associations or organizations of individuals who have been or are being injured by the Defendants' failure to comply with the requirements of Chapter 5 of the federal APA.

26.     All Plaintiffs have suffered, and continue to suffer, diversion of their resources to identify, inform and advise their members about, and respond to Defendants' unlawful actions in adopting the challenged provisions of the 2018 OCR Manual.

27.     All Plaintiffs have experienced, and continue to experience, frustration of their missions to ensure equal access to education for their members and others who experience discrimination by recipients of federal financial assistance in violation of federal civil rights law.

28.     Plaintiffs have organizational or associational standing to bring this suit on behalf of themselves and their members.

29.      Defendants are the U.S. Department of Education ("DOE"), current U.S. Secretary of Education Betsy DeVos, and Candice Jackson, Acting Assistant Secretary for Civil Rights.  Ms. DeVos and Ms. Jackson are sued in their official capacities.

30.     As the U.S. Secretary of Education, Ms. DeVos is responsible for the administration of the DOE in accordance with law, including adoption of rules and regulations pursuant to the rule-making procedures set out in the federal Administrative Procedure Act, 5 U.S.C. Chapter 5, §§ 551, et seq.

31.     As the Acting Assistant Secretary for Civil Rights, Ms. Jackson is responsible for the administration of the DOE's Office for Civil Rights ("OCR") in accordance with law, including mandating procedures for the handling and processing of complaints of illegal discrimination made to OCR for investigation.

32.     This Court has subject matter jurisdiction over this matter pursuant to 5 U.S.C. §702 and 28 U.S.C. §§ 1331 and 2201.

33.     This Court has authority to issue declaratory relief pursuant to 28 U.S.C. § 2201.

34.     Venue is properly in this Court under 28 U.S.C. §1391(e)(1)(C), because the United States, its agencies, and its officials acting in their official capacity may be sued in the federal judicial jurisdiction in which the plaintiffs reside, so long as no real property is involved in the suit.  For purposes of venue, an association is deemed to reside in the judicial district in which it maintains its principle place of business.  28 U.S.C. §1391(c)(2).  Plaintiff NFB's principal place

of business is in Baltimore, Maryland.  Plaintiff COPAA's principal place of business is in

Baltimore, Maryland. Plaintiff NAACP's principal place of business is in Baltimore, Maryland.

Venue in this Court is also appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of

the events or omissions giving rise to the claim arose in this district.

## LEGAL BACKGROUND

35.     The head of a federal Executive Department may adopt rules for the conduct and

government of her agency.  5 U.S.C. §301.

36.     Adoption of such rules must comply with the requirements of the rule-making

procedures of the federal Administrative Procedure Act ("APA"), 5 U.S.C. §551, et seq., if the

proposed rules meet the definition of "rule" found in 5 U.S.C. §551(4):  " … the whole or a part

of an agency statement of general or particular applicability and future effect designed to

implement, interpret, or prescribe law or policy or describing the organization, procedure, or

practice requirements of an agency . . . ."

37.     The APA requires that courts "shall … hold unlawful and set aside agency action,

findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law."  5 U.S.C. § 706(2)(A), (B).

38.     The APA also requires that rules proposed by a federal agency first be published in

the Federal Register, with the terms or substance of the proposed rule, the legal authority for the

proposed rule, and specific information regarding when a public hearing on the proposed rule will

take place.  5 U.S.C. §§ 553(b), (d).

39.     Under the APA, the proposing agency must consider, prior to adoption of the rule,

all written data, views, or arguments submitted by interested persons regarding the proposed rule.

5 U.S.C. §§ 553(c), (d).   This set of APA provisions for publication and consideration of comments

is referred to as the "notice-and-comment requirement."

40.     5 U.S.C. §702 creates a cause of action in federal court for any person who has suffered legal wrong because of, or been adversely affected or aggrieved by, an agency action or failure to act as required by the rule-making statutes.  The statute waives the sovereign immunity of the federal government for such a lawsuit, so long as the lawsuit is against a federal agency or a federal employee who acted or failed to act in her official capacity or under color of legal authority, and the suit does not request monetary damages.

41.     28 U.S.C. § 2201 permits this Court to issue a declaratory judgment that the Defendants have violated 5 U.S.C. Chapter 5 in adopting certain provisions in the 2018 OCR Manual, as identified below.

## RELEVANT FACTS

42.     Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* ("Section 504"), prohibits discrimination by recipients of federal financial assistance, including assistance from the DOE, from discriminating against individuals with disabilities.

43.     Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* ("Title VI"), prohibits discrimination by recipients of federal financial assistance, including assistance from the DOE, from discriminating on the basis of race, color, or national origin.

44.     The DOE's Title VI regulations provide:

> The responsible Department official or his designee *will* make a prompt investigation *whenever* a compliance review, report, complaint, or any other information *indicates a possible failure to comply* with this part.

34 C.F.R. § 100.7(c) (Title 34, Subchapter B, Chapter 1, Part 100:  Non-Discrimination Under Programs Receiving Federal Assistance Through the Department of Education Effectuation of Title VI of the Civil Rights Act of 1964) (emphasis added).

45.     Section 504 requires agencies that provide federal funding to apply the same remedies, procedures, and rights set forth in Title VI to the civil rights of persons with disabilities.

29 U.S.C. § 794a(a).  DOE adopted the Title VI rights and procedures, including 34 C.F.R. § 100.7, for complaints of violations of Section 504.   34 C.F.R. § 104.61.

46.     In 2015, the OCR issued a Case Processing Manual ("2015 OCR Manual"), which adopted "procedures to promptly and effectively investigate and resolve complaints, compliance reviews and directed investigations to ensure compliance with the civil rights laws enforced by OCR," including Title VI and Section 504.  2015 OCR Manual, Introduction.

47.     The 2015 OCR Manual set out the process by which OCR staff received and investigated complaints from individuals who allege that a person or entity that receives funding from the DOE has violated the civil rights laws by illegally discriminating on the basis of race, color, national origin, sex, disability, or age.  *Id.*

48.     The 2015 OCR Manual allowed timely complaints that were within OCR's jurisdiction to be dismissed prior to opening an investigation in three circumstances, namely, (1) if the complaint, on its face, failed to state a claim of violation of one of the laws that OCR enforces, (2) if it lacked sufficient detail for OCR to infer that discrimination has occurred, or (3) if it was so speculative, conclusory or incoherent that OCR could not infer that discrimination had occurred. *Id*. § 108.

~~49.~~     The 2015 OCR Manual also provided several bases for closing complaints after opening an investigation, including that OCR, in its discretion, could administratively close a complaint that was "a continuation of a pattern of complaints previously filed by the complainant or someone other than the complainant involving the same allegation(s) and/or the same issue(s) that have been found to be without merit by OCR."  *Id*. § 110(j).

~~50.~~49.  The 2015 OCR Manual did not require that a complaint be dismissed, either mandatorily or through OCR's discretion, simply because the same complainant had filed more than one complaint or because the complaint included multiple alleged discriminators.  Nor did

13

the 2015 OCR Manual provide for dismissal or closure because OCR had dismissed a previous complaint against the same recipient by another complainant without finding the complaint meritless.

51.50.  The 2015 Manual also provided that, if an investigation concluded that the preponderance of the evidence did not support a conclusion that the recipient had violated applicable law, OCR would issue a letter of findings explaining the reasons for its decision.  2015 Manual § 303.  The 2015 Manual stated that "OCR affords an opportunity to the complainant to appeal" such a letter of findings to the Director of the Enforcement Office that issued the letter. 2015 OCR Manual §§ 303(a) and 306.

52.51.  In March 2018, OCR issued a new "U. S. Department of Education, Office for Civil Rights, Case Processing Manual.  The Introduction to the 2018 OCR Manual states:

> The Case Processing Manual (CPM) provides OCR with the procedures to promptly and effectively investigate and resolve complaints, compliance reviews, and directed investigations to ensure compliance with the civil rights laws and regulations enforced by OCR.

2018 OCR Manual, Introduction.  Upon information and belief, the 2018 Manual replaces the 2015 OCR Manual.

53.52.  The 2018 OCR Manual includes the following provision, which was not in the 2015 OCR Manual:

> … OCR **will** dismiss an allegation, or, if appropriate, the complaint in its entirety, when:
> …
>
> (t)    A complaint is a continuation of a pattern of complaints previously filed with OCR by an individual or group against multiple recipients or a complaint(s) is filed for the first time against multiple recipients that, viewed as a whole, places an unreasonable burden on OCR's resources. OCR may consider conducting a compliance review or providing technical assistance concerning the issues raised by the complaint.

14

2018 Manual §108(t) (emphasis original).  This provision, interpreted in accordance with ordinary rules of grammar and punctuation, means that a complaint **will be dismissed** without investigation if:

> (1)  it is part of a series of complaints by a single complainant or group of complainants against multiple recipients, even if it alleges different factual and legal violations; or
> (2)  it is a single complaint against multiple recipients that, when viewed together, places an unreasonable burden on OCR's resources.

Unlike the 2015 OCR Manual, dismissal is mandatory, and there is no requirement that the previous complaints have been found to be without merit, or even that the undefined "pattern" involves the same or similar allegations.

~~54.~~53.  The first change ("Rule Change 1") means that, as of March 5, 2018, OCR will no longer investigate a claim of illegal discrimination if the claim is part of "a pattern" of complaints by an individual complainant against multiple recipients. "Pattern" is undefined and may cover as few as two complaints, involving different allegations against different entities over an unspecified period of time.  This provision, as written, is not limited to those complaints that would place an "unreasonable burden" on OCR.  Nor is this provision limited to instances where the prior complaints were meritless.

~~55.~~54.  This new restriction affects both individuals who have been subjected to more than one incident of illegal discrimination and organizations that represent individuals who cannot afford to bring claims on their own.  The latter groups often submit claims over time for multiple individuals against multiple recipients.  These groups include entities like Plaintiffs, civil rights advocates and attorneys, and the Protection and Advocacy systems, which are federally authorized and funded to pursue administrative, legal and other claims of discrimination on behalf of

individuals with disabilities under 54 U.S.C. § 15043, 29 U.S.C.   § 3004, and 42 U.S.C. § 10803-07.

~~56.~~55.  According to the language of §108(t) of the 2018 OCR Manual, such entities **will** be blocked from bringing multiple claims on behalf of their multiple constituents.  Because DOE provided no opportunity for notice and comment, the NFB, COPAA, the NAACP, and other entities were unable to bring this problem to the attention of DOE before it adopted the new provision.

~~57.~~56.  In addition, the 2018 Manual precludes these groups and individuals from bringing a single complaint against multiple recipients (even if those recipients acted together), if OCR, in its sole judgment, and on the basis of unknown factors, decides that investigating would place an undefined "unreasonable burden" on OCR's resources ("Rule Change 2").

~~58.~~57.  These two distinct and substantive changes mean that, as of March 5, 2018, OCR has unilaterally eliminated a right of claimants that was created by the DOE's regulations and maintained in prior Case Processing Manuals: the right to have one's claim of discrimination investigated if it indicates a possible failure to comply with federal civil rights laws.

58.   The 2018 OCR Manual also added the following provision ("Rule Change 3), which was not in the 2015 OCR Manual:

> … OCR **will** dismiss an allegation, or, if appropriate, the complaint in its entirety, when:
> …
>
> (k)   The complaint filed by the complainant or someone other than the complainant against the same recipient raises the same or similar allegation(s) based on the same operative facts that was previously dismissed by OCR pursuant to subsections 108(a), (e), g(ii), (i), (l), (n), (r), (s), (t), or (u).
>
> 2018 Manual §108(t) (emphasis original).

59.    These Rule Changes 1 and 2 to the 2018 OCR Manual are arbitrary, capricious, and not in accordance with law.

59.60.  The ban on complaints from persons or entities who have made complaints in the past or complaints against multiple recipients of federal funds directly contradicts the DOE regulations requiring that all complaints be investigated.  Neither regulations nor statutes empower DOE's OCR to limit the complaints that will be investigated in this fashion.

60.61.  Further, DOE has provided no rationale for this ban on complaints, making the ban arbitrary and capricious.

62.    Since March 2018, OCR has, upon information and belief, dismissed dozens, if not hundreds, of complaints of discrimination filed against recipients pursuant to § 108(t).  In addition, upon information and belief, OCR has relied on § 108(k) to dismiss complaints filed by new complainants against recipients identified in prior complaints that were dismissed under § 108(t), thus expanding its refusal to investigate these recipients, regardless of who complains about their discrimination.

61.63.  Plaintiffs and their members have been and are being injured by DOE's and OCR's adoption of arbitrary, capricious, and illegal rules that eliminate potentially legitimate complaints of violation of the DOE's non-discrimination statutes.

62.64.  In addition to adding § 108(t), DOE made a thirdfourth change that eliminated complainants' right to appeal OCR findings of insufficient evidence ("Rule Change 34").

63.65.  The 2015 OCR Manual included a right for complainants to appeal OCR decisions to close their complaints for lack of evidence. In the 2018 OCR Manual, DOE eliminated the entire "Appeals" section.  There is no provision in the 2018 OCR Manual offering an appeal or reconsideration of an OCR determination not to pursue a claim of discrimination.   The appeal right was eliminated without notice and comment and without any stated rationale to support it.

17

64.66.  None of the threefour 2018 OCR Manual rule changes is merely an interpretative rule, a general statement of policy, or a rule of agency organization, procedure, or practice.  All the changes shift and affect rights and interests of complainants, and make substantive changes to prior rules.   Therefore, all threefour changes were required to be subject to notice and comment under the APA.

65.67.  DOE did not comply with the federal APA rule-making procedures set out in 5 U.S.C. Chapter 5, §§ 551, *et seq*., before issuing the 2018 OCR Manual.  The proposed 2018 OCR Manual was not published in the Federal Register, nor were public comments on the proposal sought, received, or considered, prior to the 2018 OCR Manual's adoption.  Plaintiffs did not have an opportunity for notice and comment before the Manual was adopted and put into effect.

66.68.  DOE failed to afford Plaintiffs an opportunity to provide information to DOE regarding the impact that its changes to the OCR Manual would have on their members, who are and will continue to be affected and injured by the adoption of the threefour Manual changes, and by the denial of an opportunity to comment on the proposed changes before adoption.

67.69.  Plaintiffs' interest in preserving the rights of their members to have all claims of illegal discrimination by recipients of federal financial assistance investigated by OCR and to provide comments on the changes to the Manual falls squarely within the zone of interests that the APA rule-making provisions are designed to protect.

68.70.  DOE's action in adopting the changes in the 2018 OCR Manual is final. The Manual went into effect on March 5, 2018.  There is no other remedy for this injury except suit in federal court.

## CAUSES OF ACTION

**COUNT I:  Violations of 5 USC Chapter 5, §§ 551, *et seq*.:**
**Adoption of a Rule that is Not in Accordance with Law**
**(for Injunctive and Declaratory Relief)**

69.71.  Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

70.72.  This Court is empowered by 5 U.S.C. § 702 to hold unlawful and set aside agency action that the Court finds to be not in accordance with law.

71.73.  This Court is empowered by 28 U.S.C. § 2201 to declare the rights of Plaintiffs and other interested parties regarding the issues presented in this Complaint.

72.74.  OCR Manual Rule Changes 1, 2, and 23 wholly and unequivocally contradict DOE regulationregulations 34 C.F.R. § 100.7(c) and 34 C.F.R. § 104.61, which provide that DOE "*will* make a proper investigation" when it receives a complaint that "*indicates* a possible" illegal discriminatory action by a recipient of federal educational funds (emphasis added).  Nothing in these regulations permits DOE or OCR to refuse to investigate complaints on the grounds that the complainant has submitted other complaints, or that there is more than one alleged discriminating recipient, or that a previous meritorious complaint has been dismissed.

73.75.  To the extent that the ban on complaints against multiple entities is intended to preserve agency resources, nothing in the DOE's implementing statutes or regulations authorizes adoption of a rule upon that basis.   34 C.F.R. §100.7(c) and 34 C.F.R. § 104.61 do not state any basis for refusing to investigate a claim in order to preserve agency resources.

74.76.  Nor has DOE provided the public with any evidence that agency resources are being over-used as a result of multiple meritorious discrimination claims from a single complainant or group or as a result of single complaints against multiple entities.  The 2015 OCR Manual already permitted OCR to dismiss complaints that did not allege illegal discrimination, were duplicative of other claims, or were part of a pattern of meritless complaints, and to refuse review of complaints with procedural defects.  Those provisions already reduced OCR's workload by eliminating groundless complaints.  In fact, according to DOE's own documents, in 2016 OCR

already dismissed 58% of the complaints it received.  Department of Education Office for Civil Rights Fiscal Year 2018 Budget Request at Z-13, available at https://www2.ed.gov/about/overview/budget/budget18/justifications/z-ocr.pdf (last visited May 30, 2018).

75.77.  In addition, Congress appropriated an increase of $8.5 million for DOE OCR for fiscal year 2018, for a total annual budget of $117,000,000.  Consolidated Appropriations Act of 2018, Public Law No: 115-141 (March 23, 2018).  Notably, DOE's FY 2018 Budget Request sought a flat budget of only $106,797,000, over $10 million less than Congress provided, and proposed to decrease staff by 46 full time equivalents.  Department of Education Office for Civil Rights Fiscal Year 2018 Budget Request at Z-7, available at https://www2.ed.gov/about/overview/budget/budget18/justifications/z-ocr.pdf (last visited May 30, 2018).

76.78.  Many claims that are banned by § 108(t) of the 2018 OCR Manual allege legitimate claims of illegal discrimination, but will be dismissed nonetheless for no reason permitted by federal statute or regulation.

79.    Even if the fact that a complainant had filed a pattern of previous complaints or that a complainant filed against multiple recipients were legitimate bases for dismissal, the DOE regulations requiring investigation of complaints do not permit dismissal of complaints filed by complainants who have not filed patterns of complaints or filed against multiple recipients.  Yet that is what OCR accomplishes through § 108(k) of the 2018 OCR Manual.

77.80.  Plaintiffs are entitled to a declaratory judgment that § 108(t) of the 2018 OCR Manual is not in accordance with law and violates Chapter 5 of the APA.

78.81.  Plaintiffs are entitled to an order vacating § 108(t) of the 2018 OCR Manual and enjoining the DOE and OCR officials, as named in this suit, from implementing it, and reopening all complaints dismissed under this section.

82.     Plaintiffs are also entitled to a declaratory judgment that § 108(k), to the extent it permits dismissal based on a prior dismissal under § 108(t), is not in accordance with law and violates the APA, and an order enjoining Defendant from dismissing complaints under § 108(k) based on previous dismissals under § 108(t) and requiring DOE to reopen any complaints dismissed for this reason.

**COUNT II:  Violation of 5 USC Chapter 5, §§ 551, *et seq.***
**Adoption of a Rule that is Arbitrary or Capricious**
**(for Injunctive and Declaratory Relief)**

79.83.  Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

80.84.  This Court is empowered by 5 U.S.C. § 702 to hold unlawful and set aside agency action that the Court finds to be arbitrary or capricious.

81.85.  This Court is empowered by 28 U.S.C. § 2201 to declare the rights of Plaintiffs and other interested parties regarding the issues presented in this Complaint.

82.86.  On its face, the rules adopted by the DOE and OCR in §108(t) of the 2018 OCR Manual, and in § 108(k) of the Manual to the extent it relies on dismissal under § 108(t), are arbitrary or capricious, or both.  Neither the DOE nor OCR has identified any evidence or rationale to support the 2018 OCR Manual's ban on complaints from claimants who have submitted more than one complaint in the past or a single complaint against multiple recipients.  None of the essential terms used in § 108(t) to the 2018 OCR Manual is defined, such as the number of past complaints that constitute a "pattern," the time frame covered, or the threshold for a finding of "unreasonable burden."  As a result, OCR can articulate no rational basis for dismissing a

complaint based upon §108(t).   Nor have DOE or OCR identified any rationale to support the dismissal under § 108(k) of complaints similar to complaints dismissed under § 108(t) when filed by a different complainant.

83.87.  This ban negatively affects the rights of Plaintiffs and their members, and substantively changes the prior rule, by precluding legitimate claims of illegal discrimination by educational entities, submitted by persons who have suffered the discrimination.

84.88.  To the extent that the ban is intended to preserve agency resources, DOE has provided the public with no evidence that agency resources are being over-used as a result of multiple meritorious discrimination claims from a single complainant or group.  The 2015 OCR Manual already permitted OCR to dismiss complaints that did not allege illegal discrimination, were duplicative of other claims, or were part of a pattern of meritless complaints, and to refuse review of complaints with procedural defects.  Those provisions already reduced OCR's workload by allowing OCR to dismiss 58% of the complaints it received in fiscal year 2016.  Department of Education Office for Civil Rights Fiscal Year 2018 Budget Request at Z-13, available at https://www2.ed.gov/about/overview/budget/budget18/justifications/z-ocr.pdf  (last visited May 30, 2018).

85.89.  In addition, Congress appropriated an increase of $8.5 million for DOE OCR for fiscal year 2018, for a total annual budget of $117,000,000.  Consolidated Appropriations Act of 2018, Public Law No: 115-141 (March 23, 2018).  This appropriation was over $10 million more than DOE requested.  Department of Education Office for Civil Rights Fiscal Year 2018 Budget Request at Z-7, available at https://www2.ed.gov/about/overview/budget/budget18/justifications/z-ocr.pdf (last visited May 30, 2018).

86.90.  There is no rational basis for assuming that a claim is meritless or unworthy of investigation simply because it was submitted by a party who has submitted other meritorious claims in the past or has filed against multiple violators.  Nor is there a rational basis for assuming another victim's first complaint is meritless because it is similar to one filed previously by a different complainant who had filed more than one complaint.  Because there is no rational basis for the assumptions underlying §108(t) of the 2018 OCR Manual, its adoption was arbitrary or capricious, or both.  To the extent § 108(k) is based on dismissals under § 108(t), it, too is arbitrary or capricious, or both.

87.91.  Plaintiffs are entitled to a declaratory judgment that § 108(t) of the 2018 OCR Manual described in this Complaint, and § 108(k) to the extent it is based on § 108(k), are arbitrary and capricious and violates violate Chapter 5 of the APA.  Plaintiffs are entitled to an order vacating § 108(t) and enjoining the DOE and OCR officials, as named in this suit, from implementing or enforcing it.  and disallowing DOE from using § 108(k) to dismiss complaints based on prior dismissals under § 108(t).  Plaintiffs are entitled to an order enjoining Defendants to reinstate and fully investigate complaints dismissed pursuant to § 108(t) and those that were dismissed under § 108(k) based on dismissals under § 108(t).

### COUNT III:  Violation of 5 U.S.C. Chapter 5, §§ 551, *et seq*.: Failure to comply with notice and comment requirements (for Injunctive and Declaratory Relief)

88.92.  Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

89.93.  This Court is empowered by 5 U.S.C. §§ 702 and 706 to hold unlawful and set aside final agency action that the Court finds to have been adopted without observance of procedure required by law.

90.94.  This Court is empowered by 28 U.S.C. § 2201 to declare the rights of Plaintiffs and other interested parties regarding the issues presented in this Complaint.

91.95.  DOE and OCR have violated the APA, 5 U.S.C. Chapter 5, §§ 551, *et seq*., by adopting § 108(t) and § 108(k) of the 2018 OCR Manual and eliminating the right to appeal without complying with the notice and comment requirements of the APA rule-making provisions.

92.96.  None of the threefour 2018 OCR Manual changes is merely an interpretative rule, a general statement of policy, or a rule of agency organization, procedure, or practice.  The changes shift and affect rights and interests of complainants, and make substantive amendments to prior rules.

93.97.  No public notice of these new rules was provided to interested persons, and interested persons were given no opportunity to provide comment on them before they were adopted.  No explanation, reason or rationale was provided for the unilateral adoption of these changes.

94.98.  Plaintiffs have been injured in that the DOE and OCR have adopted rules that bar investigation of potentially legitimate complaints of violations of the DOE's non-discrimination statutes, and eliminate a right to appeal a closure of a complaint for insufficient evidence, without Plaintiffs, Plaintiffs' members, or other members of the public having an opportunity to provide the DOE with their considered and experienced views on the proposed action.  As a result, some legitimate discrimination claims will be precluded because DOE did not consider all available views and comments on the proposed changes.

95.99.  Plaintiffs are entitled to a declaratory judgment that the threefour changes in the 2018 OCR Manual described in this Complaint were adopted without compliance with Chapter 5 of the APA, and are, therefore, illegal.

96.100.        Plaintiffs are entitled to an order vacating § 108(t) of the 2018 OCR Manual, vacating § 108(k) to the extent it relies on § 108(t), and reinstating itsthe appeals process, enjoining the DOE and OCR officials, as named in this suit, from implementing thosethese changes, requiring them to reopen complaints and appeals dismissed pursuant to the unlawful provisions, and, requiring them, before attempting to adopt any similar provisions, to comply with the notice and comment requirements of the APA, 5 U.S.C. Chapter 5, §§ 551, et seq.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs the National Federation of the Blind, Council of Parent Attorneys and Advocates, and National Association for the Advancement of Colored People respectfully request that this Court enter a judgment in their favor, and against Defendants, and:

a)   Declare that Defendants' adoption of § 108(t) in the 2018 OCR Manual was, and its adoption of § 108(k) relying on § 108(t), were not in accordance with law and waswere beyond statutory and regulatory authority, in violation of the Administrative Procedure Act;

b)   Declare that Defendants' adoption of § 108(t) and § 108(k) in the 2018 OCR Manual was arbitrary, or capricious, or both, in violation of the Administrative Procedure Act;

c)   Declare that Defendants' adoption of § 108(t) and § 108(k) and the elimination of the 2015 OCR Manual § 303(a) appeal right in the 2018 OCR Manual without complying with notice and comment requirements violated the Administrative Procedure Act;

d)   Vacate and set aside the challenged provisions of the 2018 OCR Manual, pursuant to 5 U.S.C. § 702;

e)   Preliminarily and permanently enjoin Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with them, from acting in accordance with implementing § 108(t) of the 2018 OCR Manual, and § 108(k) to the extent it relies on § 108(t), and from denying the right to appeal a dismissal of a claim for insufficient evidence;

f)   Preliminarily and permanently enjoin Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with them to reopen and fully investigate all complaints dismissed pursuant to § 108(t) and all complaints dismissed pursuant to § 108(k) based on a dismissal pursuant to § 108(t);

f)g)Preliminarily and permanently enjoin Defendants to comply with DOE regulations and the notice and comment requirements of the Administrative Procedure Act in the development of any provisions replacing the vacated provisions of the Manual;

g)h)      Award Plaintiffs their reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

h)i)Order such other and further relief that this Court may deem just and proper.

Respectfully submitted,

Dated: <u>May 31, 2018</u>

_____/s/_____
Eve L. Hill (Fed. Bar No.: 19938)
Brooke E. Lierman (Fed. Bar No. 17879)
BROWN GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
T: (410) 962-1030
F: (410) 385-0869
ehill@browngold.com
blierman@browngold.com

*Attorneys for Plaintiffs*