**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| THE NATIONAL FEDERATION OF THE BLIND, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 18-01568 (TDC) |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF EDUCATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND .................................................................................................................2

    I.      STATUTORY AND REGULATORY BACKGROUND...........................................2

    II.     OCR'S USE OF THE CASE PROCESSING MANUAL...........................................4

    III.    THIS LITIGATION ...............................................................................................6

ARGUMENT.......................................................................................................................7

    I.      STANDARD OF REVIEW......................................................................................7

    II.     PLAINTIFFS' LAWSUIT SHOULD BE DISMISSED FOR LACK OF
          JURISDICTION. .....................................................................................................8

          A.  Plaintiffs Lack Organizational Standing. ........................................................9

          B.  Plaintiffs Lack Representational Standing.....................................................11

          C.  Counts I and II of the Second Amended Complaint are moot. ...........................13

          D.  Plaintiffs cannot show that either exception to the mootness doctrine
               applies here. ...............................................................................................17

          E.  Count III's procedural claim must be dismissed for lack of standing. .................19

    III.    COUNTS I, II, AND III FAIL TO STATE CLAIMS UPON WHICH
          RELIEF MAY BE GRANTED. ..............................................................................21

          A.  Plaintiffs have an adequate remedy against the recipients named in their
               complaints......................................................................................................21

          B.  The elimination of the opportunity to appeal is not subject to the APA's
               notice and comment procedures. ...................................................................23

CONCLUSION..................................................................................................................26

## TABLE OF AUTHORITIES

**CASES**

*Adams v. Bain,*
   697 F.2d 1213 (4th Cir. 1982) ................................................................................................7

*Adamski v. McHugh,*
   304 F. Supp. 3d 227 (D.D.C. 2015) ......................................................................................7

*Am. Chemistry Council v. Dep't of Transp.,*
   468 F.3d 810 (D.C. Cir. 2006) ............................................................................................12

*Am. Civil Liberties Union of Mass. ("ACLU of Mass.") v. U.S. Conference of Bishops,*
   705 F.3d 44 (1st Cir. 2013) ........................................................................................... 14, 19

*Am. Legal Found. v. FCC,*
   808 F.2d 84 (D.C. Cir. 1987) ..............................................................................................10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..............................................................................................................8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..............................................................................................................8

*Brown v. Buhman,*
   822 F.3d 1151 (10th Cir. 2016) ..........................................................................................17

*Cannon v. Univ. of Chi.,*
   441 U.S. 677 (1979) .....................................................................................................*passim*

*Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co.,*
   617 F.3d 1040 (8th Cir. 2010) ....................................................................................... 23, 25

*Chamber of Commerce of U.S. v. U.S. Dep't of Labor,*
   174 F.3d 206 (D.C. Cir. 1999) ............................................................................................24

*Church of Scientology of Cal. v. United States,*
   506 U.S. 9 (1992) ................................................................................................................13

*Citizens for Responsibility & Ethics in Wash. ("CREW") v. SEC,*
   858 F. Supp. 2d 51 (D.D.C. 2012) ................................................................................ 14, 17

*City of Houston, Tex. v. U.S. Dep't of Hous. & Urban Dev.,*
   24 F.3d 1421 (D.C. Cir. 1994) ............................................................................................15

*Clapper v. Amnesty Int'l USA,*
   133 S. Ct. 1138 (2013) ........................................................................................................11

*Clear Sky Car Wash LLC v. City of Chesapeake, Va.,*
  743 F.3d 438 (4th Cir. 2014) ................................................................................21

*Cty. of Los Angeles v. Davis,*
  440 U.S. 625 (1979) ................................................................................ 17, 18

*Cunningham v. Riley,*
  98 F. Supp. 2d 554 (D. De. 2000) ........................................................................21

*Elk Grove Unified Sch. Dist. v. Newdow,*
  542 U.S. 1 (2004) ................................................................................ 10, 15

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,*
  545 U.S. 546 (2005) ................................................................................7

*Fusaro v. Davitt,*
  327 F. Supp. 3d 907 (D. Md. 2018) ........................................................................8

*FW/PBS, Inc. v. Dallas,*
  493 U.S. 215 (1990) ................................................................................11

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982) ................................................................................10

*Incumaa v. Ozmint,*
  507 F.3d 281 (4th Cir. 2007) ........................................................13, 17, 19

*Inova Alexandria Hosp. v. Shalala,*
  244 F.3d 342 (4th Cir. 2001) ................................................................ 24, 25

*James V. Hurson Assocs., Inc. v. Glickman,*
  229 F.3d 277 (D.C. Cir. 2000) ................................................................ 24, 25

*JEM Broad. Co. v. FCC,*
  22 F.3d 320 (D.C. Cir. 1994) ................................................................24

*Jersey Heights Neighborhood Ass'n v. Glendening,*
  174 F.3d 180 (4th Cir. 1999) ................................................................22, 23, 25

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) ................................................................................7

*Lee v. U.S. Citizenship & Immig. Servs.,*
  592 F.3d 612 (4th Cir. 2010) ................................................................ 21, 22

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ................................................................................ 7, 15

*Lux v. Judd,*
   651 F.3d 396 (4th Cir. 2011) ............................................................................................19

*Miles v. Moore,*
   Civ. No. 3:10-162, 2012 WL 4866561 (E.D. Va. Oct. 12, 2012) ................................ 15, 16

*Nat'l Alliance for Accessibility, Inc. v. C1 Md. Bus. Trust,*
   Civ. No. 12-3224 (PWG), 2013 WL 4229262 (D. Md. Aug. 14, 2013) .............................15

*Nat'l Ass'n of Home Builders v. EPA,*
   667 F.3d 6 (D.C. Cir. 2011) ............................................................................................20

*Nat'l Sec. Counselors v. CIA,*
   931 F. Supp. 2d 77 (D.D.C. 2013) ............................................................................ 24, 25

*Nat'l Taxpayers Union, Inc. v. United States,*
   68 F.3d 1428 (D.C. Cir. 1995) ..................................................................................... 9, 10

*Neitzke v. Williams,*
   490 U.S. 319 (1989) ..........................................................................................................8

*Nicholas v. Green Tree Servicing, LLC,*
   173 F. Supp. 3d 250 (D. Md. 2016) ..................................................................................7

*People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.,*
   285 F. Supp. 3d 307 (D.D.C. 2018) ................................................................................14

*Powell v. McCormack,*
   395 U.S. 486 (1969) ........................................................................................................13

*Princeton Univ. v. Schmid,*
   455 U.S. 100 (1982) .................................................................................................. 16, 17

*Rio Grande Silvery Minnow v. Bureau of Reclamation,*
   601 F.3d 1096 (10th Cir. 2010) ......................................................................................15

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC,*
   713 F.3d 175 (4th Cir. 2013) ..........................................................................................11

*Sierra Club v. EPA,*
   754 F.3d 995 (D.C. Cir. 2014) .................................................................................. 20, 21

*Sierra Club v. Morton,*
   405 U.S. 727 (1972) ..................................................................................................... 9, 10

*Simon v. E. Ky. Welfare Rights Org.,*
   426 U.S. 26 (1976) ..........................................................................................................10

*Spann v. Colonial Village, Inc.*,
  899 F.2d 24 (D.C. Cir. 1990) ...........................................................................................10

*South Carolina v. United States*,
  243 F. Supp. 3d 673 (D.S.C. 2017) .................................................................................16

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) .............................................................................................................7

*Strubel v. Comenity Bank*,
  842 F.3d 181 (2d Cir. 2016) ..................................................................................... 19, 20

*Summers v. Earth Island Isntit.*,
  555 U.S. 488 (2009) ................................................................................... 11, 12, 19, 21

*United States v. W.T. Grant Co.*,
  345 U.S. 629 (1953) .........................................................................................................17

*Warth v. Seldin*,
  422 U.S. 490 (1975) .........................................................................................................11

*Wash. Legal Found. v. Alexander*,
  984 F.2d 483 (D.C. Cir. 1993) ...............................................................................2, 21, 22

*West v. Spellings*,
  480 F.Supp.2d 213 (D.D.C. 2007) ...................................................................................21

*Women's Equality Action League ("WEAL") v. Cavazos*,
  906 F.2d 742 (D.C. Cir. 1990) .....................................................................................3, 22

*Zaycer v. Sturm Foods, Inc.*,
  896 F. Supp. 2d 399 (D. Md. 2012) ...................................................................................7

**STATUTES**

5 U.S.C. § 553 ......................................................................................................................24

5 U.S.C. § 701 *et seq.*..............................................................................................................5

5 U.S.C. § 704 ........................................................................................................2, 21, 22

20 U.S.C. § 1682 .....................................................................................................................3

20 U.S.C. § 1683 .....................................................................................................................4

42 U.S.C. § 2000d-1 ...............................................................................................................2

42 U.S.C. § 2000d-2 ...................................................................................................................4

## REGULATIONS

34 C.F.R. § 100.6-100.11 ....................................................................................................... 3, 4

34 C.F.R. § 100.7 ........................................................................................................3, 4, 13, 18

34 C.F.R. § 100.8 ....................................................................................................................4

34 C.F.R. § 104.61 .................................................................................................................13

## RULES

Fed. R. Civ. P. 12 ............................................................................................................ 7, 8, 21

## OTHER AUTHORITIES

Education Amendments of 1972,
    Pub. L. No. 92-318, 86 Stat. 235 (codified as amended at 20 U.S.C. § 1681 *et seq.* (2000)) ...............2

Nov. 2018 CPM, § 303..............................................................................................................4

March 2018 CPM, § 108 ........................................................................................................ 5, 6

**INTRODUCTION**

Plaintiffs, three non-profit organizations and their members, filed this lawsuit under the Administrative Procedure Act ("APA") seeking to declare unlawful, vacate and set aside, and enjoin two provisions in a March 2018 Case Processing Manual ("CPM") issued by Defendant, the United States Department of Education ("ED"), Office for Civil Rights ("OCR"). But Plaintiffs are not entitled to this or any other relief. As an initial matter, Plaintiffs purport to bring this action on behalf of themselves and their respective members but fail to adequately allege facts sufficient to support either their organizational or representational standing claim. In addition, Plaintiffs' two substantive APA claims (Counts I and II) and their procedural one (Count III) face several insurmountable obstacles on their road to relief not the least of which is the fact that the March 2018 CPM has been superseded by another version of the CPM. Specifically, in November 2018, OCR issued a new CPM ("the November 2018 CPM"), which, among other changes, eliminates § 108(t) as a basis for dismissing complaints, and affords a new opportunity for complainant appeals—the two aspects of the March 2018 CPM that are the focus of Plaintiffs' APA claims. Another roadblock confronting Plaintiffs' claims is the fact that OCR ceased using § 108(t) as a basis for dismissing complaints in early May 2018 and has informed the five (5) individuals whose roughly 700 complaints were dismissed pursuant to § 108(t) during the intervening March 2018 to May 2018 time frame that the agency will open directed investigations into allegations in their previously-dismissed complaints.[1] Together, these intervening events render moot Counts I and II, which challenge the substantive validity of § 108(t) and seek declaratory and injunctive relief.

---

[1] In addition to informing the five (5) complainants that it intends to open directed investigations into their previously-dismissed complaints, OCR has informed one of the five (5) complainants that a subset of that complainant's § 108(t) dismissed complaints will be evaluated to determine whether to open directed investigations or take other appropriate action. *See* Declaration of Randolph Wills ("Wills Decl.") ¶ 5(a) n.1.

Plaintiffs' procedural challenge (Count III) is also jurisdictionally deficient because it asserts a procedural right untethered to any protected interest. Plaintiffs cannot point to any harm (imminent or otherwise) as a result of the challenged provisions not only because Plaintiffs' substantive challenge is moot, but more fundamentally, because Plaintiffs may directly sue the recipients named in their previously-dismissed complaints—an implied right of action under the federal civil rights laws as recognized by the Supreme Court nearly forty (40) years ago. Under these circumstances, Plaintiffs assert a procedural claim *in vacuo* for which the Court lacks jurisdiction to resolve.

Even if Plaintiffs are somehow able to overcome these jurisdictional obstacles, their claims fail as a matter of law. The APA permits lawsuits against the federal government challenging "agency action for which there is *no other adequate remedy*." 5 U.S.C. § 704 (emphasis added). Plaintiffs cannot make this showing given their well-established right to directly sue the recipients named in their complaints. *See also Wash. Legal Found. v. Alexander*, 984 F.2d 483, 486-87 (D.C. Cir. 1993). As a result of the existence of this other adequate remedy, Counts I, II, and III fail to state a claim under the APA upon which relief may be granted. Finally, Count III's notice-and-comment claim merits dismissal for the additional reason that the March 2018 CPM's elimination of the opportunity to appeal was a rule of agency procedure exempt from the APA's procedural requirements.

Thus, for these reasons explained in detail below, the Court lacks jurisdiction over Plaintiffs' claims and they should be dismissed on this basis. Alternatively, Plaintiffs' claims merit dismissal because they fail as a matter of law.

## BACKGROUND

## I.   STATUTORY AND REGULATORY BACKGROUND

Certain Federal civil rights laws protect individuals from discrimination in educational institutions that receive Federal financial assistance, such as school districts, colleges, and universities (hereafter "recipients"). For example, Title VI of the Civil Rights Act of 1964 ("Title VI") bars

2

recipients from discriminating against individuals on the basis of race, color, and national origin. *See* 42 U.S.C. § 2000d-1. Similarly, Title IX of the Education Amendments of 1972 ("Title IX") bars recipients from discriminating on the basis of sex. *See* 20 U.S.C. § 1681 *et seq.* (2000). And, Section 504 of the Rehabilitation Act of 1973, as amended, ("Section 504") prohibits recipients from discriminating on the basis of disability. *See* Pub. L. No. 93-516, 29 U.S.C. § 794 *et seq.* These Federal civil rights statutes provide two mechanisms for ensuring compliance with their respective mandates. First, individuals alleging that they are injured by discriminatory practices can bring a cause of action directly against the discriminating educational institution. *See Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979). Notably, there is no requirement to file an administrative complaint or exhaust any administrative remedies before pursuing such an action. *Id.* Indeed, the Supreme Court has "suggest[ed] that Congress considered private suits to end discrimination . . . the proper means for individuals to enforce [Title IX]." *Women's Equality Action League* ("*WEAL*") v. *Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990) (relying on *Cannon*, 441 U.S. 677).

The second mechanism for ensuring compliance with the anti-discrimination mandates set forth in Title VI, Section 504, and Title IX is through Federal agencies, such as ED, that disburse federal funds to educational institutions. These three Federal civil rights statutes require federal agencies to ensure compliance first through voluntary means. If that fails, a federal agency may initiate enforcement proceedings that could lead to the termination of federal funding. *See* 34 C.F.R § 100.8. To this end, ED's regulations establish procedures for conducting compliance reviews and investigating complaints of discrimination, which are carried out by OCR. *See* 34 C.F.R. § 100.6-100.11.

OCR conducts compliance reviews "from time to time" to assess the practices of particular recipients to determine whether they are complying with the relevant federal civil rights laws. 34 C.F.R. § 100.7(a). And, under the complaint procedures, any person who believes that he or she or

any class of individuals has been subjected to unlawful discrimination may file a written complaint with OCR.   34 C.F.R. § 100.7(b).   In either case—compliance review or complaint—if OCR investigates and determines that a recipient is not complying with the relevant federal civil rights statute and regulatory provisions, OCR is required to attempt to seek resolution "by informal means whenever possible," before employing statutorily-authorized enforcement mechanisms, such as termination of financial assistance or referral to the United States Department of Justice for appropriate enforcement proceedings.  *See id.* §§ 100.7(c)-(d), 100.8; *see also* Nov. 2018 CPM, Article III.  If, on the other hand, after an investigation, OCR determines there is insufficient evidence to support a conclusion that the recipient failed to comply with the applicable federal statute(s) and regulation(s), OCR will inform the recipient and the complainant in writing explaining its decision. *See* 34 C.F.R. § 100.7(d)(2); *see also* Nov.  2018 CPM, § 303(a).

As the Supreme Court has recognized, OCR's complaint procedures "do[] not allow the complainant to participate in the investigation or subsequent enforcement proceedings." *Cannon*, 441 U.S. at 796. n.41.  "Moreover, even if those proceedings result in a finding of a violation, a resulting voluntary compliance agreement need not include relief for the complainant." *Id.*  Finally, although a recipient has the right to challenge OCR's decision to terminate funding, *see* 42 U.S.C. § 2000d-2; 20 U.S.C. § 1683, an individual complainant has no right of action against OCR with respect to the complaint process or OCR's enforcement activities.  *See Cannon*, 441 U.S. at 706-07 n.41, 715 (observing that Title VI "appears to have been a compromise aimed at protecting individual rights without subjecting the Government to suits" and noting that suits against federal agencies would be "disruptive" of agencies' "efforts efficiently to allocate [their] enforcement resources under Title IX").

## II.     OCR'S USE OF THE CASE PROCESSING MANUAL

As mentioned above, OCR's enforcement authority includes: (1) complaint investigations, (2) compliance reviews, and (3) directed investigations.  *See* 34 C.F.R. § 100.6-100.11; *see also* Nov. 2018

4

CPM Article I, IV.[2]  The CPM is a document that sets forth the procedures for OCR's evaluation, investigation, and resolution of complaints, as well as the processes that govern OCR's initiation of periodic compliance reviews and directed investigations, all of which are aimed at ensuring that educational institutions which receive Federal financial assistance are complying with the Federal civil rights laws and regulations enforced by OCR.  *See* Declaration of Kenneth L. Marcus ("Marcus Decl.") ¶ 10.  Among other things, the CPM sets forth the internal procedures that govern:  (1) OCR personnel's evaluation of a complaint to determine whether the agency has jurisdiction over the complaint allegation's subject matter; (2) the opening of a complaint investigation, compliance review, or directed investigation by OCR personnel; and (3) case planning for the investigation, including determining the scope of the investigation, investigative methods, and resolution strategy.  *See id.* ¶ 11; *see also* Nov. 2018 CPM Arts. I, III (attached as Ex. D to Marcus Decl.).

Plaintiffs' lawsuit challenges two aspects of the March 2018 CPM, which was issued on March 5, 2018, and superseded the February 2015 CPM.  Among other changes, the March 2018 CPM added a new basis for OCR to dismiss complaints, § 108(t), and eliminated complainants' opportunity to appeal dismissal of a complaint for insufficient evidence.  *See* Marcus Decl. ¶ 12(a) & n.3; *see also* March 2018 CPM (attached as Ex. A to Marcus Decl.).  On November 18, 2018, a few months after the confirmation of Kenneth L. Marcus, ED's Assistant Secretary for Civil Rights, OCR issued a new CPM—the November 2018 CPM.  Among other changes, the November 2018 CPM eliminates § 108(t) as a basis for dismissing complaints and implements a new appeals process.  *See* Marcus Decl. ¶¶ 13-15; *see also generally* Nov. 2018 CPM.  The November 2018 CPM expressly supersedes the March 2018 CPM.  *See* Marcus Decl. ¶ 15.

---

[2] As set forth in the CPM, a directed investigation is an OCR-initiated process, similar to a compliance review but more targeted in scope.  A directed investigation is used to address possible discrimination that is not otherwise being addressed through a complaint investigation, compliance review, or technical assistance activities.  *See* Nov. 2018 CPM, § 402.

### III.    THIS LITIGATION

On May 31, 2018, Plaintiffs, three non-profit organizations and their members, filed this APA,

5 U.S.C. § 701 *et seq.*, action against Defendants challenging certain provisions of OCR's CPM, which

was issued on March 5, 2018.  *See generally* Compl., ECF No. 1 (May 31, 2018).  Specifically, Plaintiffs

challenged two aspects of the March 2018 CPM. Section 108(t) of the March 2018 CPM permitted

OCR to dismiss a complaint if it "is a continuation of a pattern of complaints previously filed with

OCR by an individual or group against multiple recipients or a complaint(s) is filed for the first time

against multiple recipients that, viewed as a whole places an unreasonable burden on OCR's

resources."  March 2018 CPM, § 108(t).  Section 108(t) further stated that "OCR may consider a

compliance review or providing technical assistance concerning the issues raised in the complaint." *Id.*

The other challenged provision is the March 2018 CPM's elimination of appeals for complaints

dismissed for insufficient evidence.  *See id.*

Shortly after this action was filed, the parties, through counsel, engaged in settlement

discussions to determine whether the parties would be able to resolve this matter outside of litigation.

*See* Order, ECF No. 24 (Aug. 30, 2018).   Unable to reach any mutually-agreeable resolution, Plaintiffs

filed an Amended Complaint on November 30, 2018, *see generally* Am. Compl., ECF No. 30-1 (Nov.

30, 2018), and then moved for leave to file a Second Amended Complaint on December 3, 2018, *see*

*generally* Second Am. Compl., ECF No. 38 (Dec. 3, 2018), which the Court granted.  Plaintiffs' three-

count Second Amended Complaint alleges that § 108(t)[3] is contrary to OCR's regulations and arbitrary

and capricious in violation of the APA, (Counts I and II), and asserts that § 108(t) and the elimination

---

[3] Plaintiffs' also allege that Defendants use of § 108(k) to the extent that it relies on § 108(t) as a
basis for dismissal is contrary to law, arbitrary and capricious, and promulgated in violation of the
APA's procedural requirements.  *See* Second Am. Compl. ¶¶ 63, 80-83, 87-92, 93-101.  For ease of
reference, this brief will refer to Plaintiffs' challenge to the use of § 108(k) to the extent that it relies
on § 108(t) and § 108(t) collectively as "§ 108(t)."

of the opportunity to appeal complaints that OCR dismissed for insufficient evidence were promulgated in violation of the APA's notice and comment requirements (Count III). *See* Second Am. Compl. ¶¶ 72-101.  In their Prayer for Relief, Plaintiffs seek, *inter alia*: (1) a declaration that § 108(t) is not in accordance with law and beyond ED's statutory and regulatory authority; (2) a declaration that § 108(t) is arbitrary and capricious; (3) a declaration that § 108(t) and the decision to eliminate the appeals process violates the APA's procedural requirements; (4) a request that the Court vacate and set aside the two challenged provisions; (5) an order enjoining Defendants from implementing or enforcing § 108(t) and enjoining defendants from "denying the right to appeal a dismissal of a claim for insufficient evidence"; (6) an order directing Defendants to reopen and fully investigate "all complaints dismissed pursuant to § 108(t)"; and (7) an order "permanently and preliminarily enjoining Defendants to comply with" the APA's procedural requirements "in the development of any provisions replacing the vacated provisions of the Manual." *Id.* Prayer for Relief (a)-(g).

## ARGUMENT

### I.     Standard of Review

Defendants move to dismiss this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).  As the Supreme Court has said "many times," "[t]he district courts of the United States . . . are 'courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)).  Accordingly, this Court has a duty to ensure that it is acting within the scope of its jurisdictional authority, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998), and "[a] plaintiff carries the burden of establishing [the court's] subject matter jurisdiction." *Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 403 (D. Md. 2012); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  For this reason, a plaintiff's factual allegations in the

complaint will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.  *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also Adamski v. McHugh*, 304 F. Supp. 3d 227, 233 (D.D.C. 2015).  And where, as here, Defendants "assert that facts outside of the complaint deprive the court of jurisdiction, the Court 'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'"[4]  *Nicholas v. Green Tree Servicing, LLC*, 173 F. Supp. 3d 250, 254 (D. Md. 2016) (internal citation omitted).

Defendants also move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The facts alleged "must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  While a court must treat the complaint's factual allegations as true, it need not accept as true legal conclusions set forth in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fusaro v. Davitt*, 327 F. Supp. 3d 907, 915 (D. Md. 2018).

## II.     Plaintiffs' Lawsuit Should Be Dismissed For Lack Of Jurisdiction.

This lawsuit merits dismissal for lack of subject matter jurisdiction for at least two reasons. First, Plaintiffs assert that they have both organizational and representational standing but fail to allege sufficient facts to sustain standing under either theory.  Second, Plaintiffs' Amended Complaint contains three counts pursuant to the APA, each of which challenges Defendants' decision to implement certain aspects of the March 2018 CPM, namely, (1) § 108(t) and (2) the decision to

---

[4] Defendants submit the Declaration of Kenneth L. Marcus, Assistant Secretary for Civil Rights and the accompanying attachments, and the Declaration of Randolph Wills ("Wills Decl."), Enforcement Director in the United States Department of Education, OCR, only to demonstrate that the Court lacks subject matter jurisdiction over Plaintiffs' claims.  The Court may properly consider these materials without converting Defendants' motion to dismiss into one for summary judgment.  *See id.*

eliminate the opportunity to appeal complaints dismissed for insufficient evidence. However, each of these claims warrants dismissal. Counts I and II assert substantive challenges to § 108(t), which are moot as a result of ED's recent issuance of the November 2018 CPM and its decision to open directed investigations into the claims underlying the roughly 700 complaints that were filed by five (5) individuals and dismissed pursuant to § 108(t). Count III—Plaintiffs' remaining procedural APA claim—fares no better. Plaintiffs lack standing to assert a notice-and-comment claim, where, as here, they cannot identify a concrete interest affected by the alleged deprivation.

### A. Plaintiffs Lack Organizational Standing.

Plaintiffs, three non-profit organizations, purport to bring this action on behalf of themselves. *See* Second Am. Compl. ¶ 7. As organizations suing on their own behalf, Plaintiffs must meet the familiar standing requirements that apply to individuals: (1) injury in fact; (2) causation; and (3) redressability. *See, e.g.*, *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995). Yet Plaintiffs make no attempt to identify an injury to their own interests as organizations as a result of the challenged provisions. Instead, the Plaintiff organizations vaguely assert that they respectively file administrative complaints as part of their missions but do not allege any actual or imminent harm derived from the challenged provisions. *See, e.g.*, Second Am. Compl. ¶¶ 9-10 (alleging that "in 2009," Plaintiff National Federation of the Blind ("NFB") has filed "several complaints with OCR and the Department of Justice"); ¶¶ 13-16 (alleging that its members, not Plaintiff Council of Parent Attorneys and Advocates ("COPAA"), file discrimination complaints and that it "frequently advises and trains parents, attorneys, and advocates about filing complaints with the DOE OCR"); ¶¶ 20-24 (alleging that "in 2016," Plaintiff National Association for the Advancement of Colored People, Inc. ("NAACP") "filed a [discrimination] complaint against the City of Richmond Public Schools" and "another complaint against Lee County Florida's school district" but failing to allege whether these complaints were filed OCR).

The federal courts do not sit to air arguments "at the behest of organizations or individuals who seek to do no more than vindicate their own value preferences," *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972), or to resolve "generalized grievances more appropriately addressed in the representative branches," *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (citation omitted). Thus, a "mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem," is insufficient to create standing. *Sierra Club*, 405 U.S. at 739. As the Supreme Court has explained:

> [I]f a 'special interest' in [a] subject were enough to entitle [one organization] to commence this litigation, there would appear to be no objective basis upon which to disallow a suit by any other bona fide 'special interest' organization however small or short-lived. And if any group with a bona fide special interest could initiate such litigation, it is difficult to perceive why any individual citizen with the same bona fide special interest would not also be entitled to do so.

*Id.* Accordingly, it is well established that an "'organization's mere abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Article III.'" *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976)).

To establish Article III injury, an organization must demonstrate a "'concrete and demonstrable injury to the organization's activities—with [a] consequent drain on the organization's resources—constituting . . . more than simply a setback to the organization's abstract social interests.'" *Nat'l Taxpayers Union*, 68 F.3d at 1433 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). "Such a showing requires 'more than allegations of damage to an interest in 'seeing' the law obeyed or a social goal furthered.'" *Id.* (quoting *Am. Legal Found. v. FCC*, 808 F.2d 84, 92 (D.C. Cir. 1987)). Rather, "'the organization must allege that discrete programmatic concerns are being directly and adversely affected'" by the challenged action. *Id.* (citation omitted).

Here, Plaintiffs do not even try to meet this test. *See* Second Am. Compl. ¶ 8-26. Plaintiffs do not allege any discrete programmatic concerns that are being directly and adversely affected by the

two challenged provisions of the March 2018 CPM.  Plaintiffs thus fall well short of its burden to establish a cognizable injury to their own interests.

### B.  Plaintiffs Lack Representational Standing.

Plaintiffs also allege that they bring this action on behalf of their members.  *See* Second Am. Compl. ¶¶ 7, 25-26.  Yet Plaintiffs make no attempt to identify an injury to their own interests as organizations as a result of the challenged provisions, nor do they identify a member who has been harmed as a result of the challenged provisions.  These allegations are patently insufficient to establish standing.

Plaintiffs bear the burden "clearly to allege facts demonstrating" their standing to sue.  *Warth v. Seldin*, 422 U.S. 490, 518 (1975).  The necessary facts "must affirmatively appear in the record" and "cannot be inferred argumentatively from averments in the pleadings."  *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).  Thus, to establish associational standing, an organization must allege that "(1) its own members would have standing to sue in their own right [(*i.e.*, the three familiar standing requirements: injury-in-fact, causation, and redressability)]; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit."  *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (internal quotation marks and citation omitted).   Furthermore, the Supreme Court "has clarified that to show that its members would have standing, an organization must 'make specific allegations establishing that at least one *identified member* had suffered or would suffer harm.'"  *Id.* (quoting *Summers*, 555 U.S. at 498).

Plaintiff' Second Amended Complaint falls woefully short of this requirement.  As an initial matter, Plaintiffs do not specifically identify any member who has suffered an alleged injury as a result of the challenged provisions in the March 2018 CPM.  For example, Plaintiff National Federation of the Blind ("NFB") identifies NFB members, Joy and Paul Orton, and vaguely references "an

additional instance of discrimination that has recently arisen" for which the Ortons "have had to file another complaint with OCR, which is currently pending."  Second Am. Compl. ¶ 11.  But glaringly absent from the Second Amended Complaint is any allegation that the Ortons' complaint was in fact dismissed pursuant to § 108(t) or that they were not afforded an opportunity to appeal a complaint dismissed for insufficient evidence.  *See id.*

The associational standing allegations of Plaintiffs, the Council of Parent Attorneys and Advocates, Inc. ("COPAA") and the National Association for the Advancement of Colored People, Inc. ("NAACP"), are equally deficient.  Plaintiff COPAA identifies Katie Kelly as a member and alleges that she "is a public interest lawyer in Florida who has filed complaints with OCR on behalf of students with disabilities and their parents" but does not allege that any complaint filed by Member Kelly was dismissed pursuant to § 108(t) or that she was not afforded an opportunity to appeal a complaint dismissed for insufficient evidence.  *See id.* ¶ 15.  And Plaintiff COPAA's nebulous statement that "[s]everal COPAA members have informed [the organization] that their complaints have already been subjected to dismissal and appeals have been denied pursuant to the [March] 2018 CPM," *see id.* ¶ 16, does nothing to salvage their associational standing claim.  The same is true of Plaintiff NAACP, which briefly references the filing of a "September 2017 . . . complaint against Lee County Florida's school district" but does not itself allege that this complaint was subject to either challenged aspect of the challenged March 2018 CPM, *see id.*

Plaintiffs' failure to specifically identify a single member who has purportedly been harmed by either § 108(t) or the lack of an opportunity to appeal a complaint dismissed for insufficient evidence is fatal to their associational standing claims.  *See Summers*, 555 U.S. at 498; *see also Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006) ("identity" of injured member must be "firmly established").   Even if Plaintiffs had identified a member who alleged such a harm, as explained

12

below, Counts I and II fail because they are moot, and Plaintiffs lack standing to assert their procedural claim in Count III.

### C.  Counts I and II of the Second Amended Complaint are moot.

Counts I and II of the Amended Complaint allege that § 108(t) of the March 2018 CPM is contrary to ED's regulations, *i.e.*, 34 C.F.R. § 100.7(c) and 34 C.F.R. § 104.61 (incorporating by reference the procedures in §§ 100.6-10) and arbitrary and capricious in violation of the APA.  *See* Second Am. Compl. ¶¶ 71-82 (Count I); *see id.* ¶¶ 83-91 (Count II).  To remedy these purported violations, Plaintiffs seek an order declaring that  the challenged March 2018 CPM provisions are unlawful and violate the APA, and request that the Court enjoin Defendants from "implementing or enforcing" these provisions and directing Defendants "to reinstate and fully investigate complaints dismissed" under the same.  *See id.* ¶¶ 80—82 (Count I request for declaratory and injunctive relief); *see also id.* ¶ 91 (Count II request for declaratory and injunctive relief).  But Plaintiffs are not entitled to any such relief.

As with Article III's standing requirement, the mootness doctrine is rooted in Article III's 'case' or 'controversy' language and is implicated in cases in which a plaintiff no longer has "the requisite personal interest" in the resolution of a case.  *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007) (internal quotation marks and citation omitted). This is because "federal courts have 'no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"  *Id.* (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)).  Accordingly, a case is moot and warrants dismissal "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the out-come."  *Id.* (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  Thus, for example, the mootness doctrine comes "in[to] play" "'if changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.'"  *Incumaa*, 507 F.3d at 286 (internal

citation omitted).   Put another way, "'[i]f events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot.'"   *People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*, 285 F. Supp. 3d 307, 312 (D.D.C. 2018) (internal citation omitted).

In this case, OCR ceased dismissing complaints pursuant to § 108(t) in May 2018.  *See* Marcus Decl. ¶ 12(c).  Moreover, the March 2018 CPM has been superseded by the November 2018, and § 108(t) has been eliminated.  *See id.* ¶¶ 13-15.  These "intervening events" render Plaintiffs' substantive challenge to the validity of § 108(t) of the March 2018 CPM (Counts I and II) moot.   There is no longer a "live controversy" between the parties regarding the validity of § 108(t), nor any basis to "vacate and set [the provision] aside," *see* Second Am. Compl. Prayer for Relief (d), because § 108(t) has been eliminated in the November 2018 CPM.  *See, e.g., Citizens for Responsibility & Ethics in Wash.* ("*CREW*") v. *SEC*, 858 F. Supp. 2d 51, 62 (D.D.C. 2012) (agency's abandonment of challenged preliminary investigation policy and efforts to develop new policy "moots Counts I, II, and V of Plaintiffs' Complaint").   Indeed, this is "ordinarily true" in challenges to "government regulatory schemes [or policies]" which have expired or have effectively been repealed." *Am. Civil Liberties Union of Mass.* ("*ACLU of Mass.*") *v. U.S. Conference of Bishops*, 705 F.3d 44, 53 (1st Cir. 2013).

There is also no meaningful relief that this Court may order with respect to OCR's prior use of § 108(t).   Plaintiffs' Amended Complaint seeks (1) a declaration regarding the substantive validity of § 108(t), (2) an order enjoining Defendants from implementing or enforcing § 108(t) as a ground for dismissal, and (3) an order directing Defendants to "reopen" previously-dismissed complaints.  *See* Second Am. Compl.  ¶¶ 81-83, 92.   However, to be entitled to such relief, Plaintiffs must "'demonstrate a 'personal stake in the outcome,' and that personal stake 'must exist at the commencement of the litigation (standing) [and] must continue throughout its existence (mootness).'" *Nat'l Alliance for Accessibility, Inc. v. C1 Md. Bus. Trust*, Civ. No. 12-3224 (PWG), 2013 WL 422962, at *2 (D. Md. Aug. 14, 2013) (internal citations omitted).  This requires Plaintiffs to demonstrate "that

there is a 'real and immediate threat' that [they] will sustain some future, direct injury as a result of the challenged conduct,'" *see id.* at *3 (internal citation omitted), which Plaintiffs have failed to do here. Nor may Plaintiffs satisfy their burden by relying solely on an alleged *past* injury. *See City of Houston, Tex. v. U.S. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1429 n.6 (D.C. Cir. 1994) ("'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects'"(quoting *Lujan*, 504 U.S. at 564).

Here, Plaintiffs are not entitled to either declaratory or injunctive relief because they cannot show "any continuing, present adverse effect" attendant to Defendants' dismissal of Plaintiffs' complaints under § 108(t).  Plaintiffs seek an order from this Court declaring §108(t) unlawful and asking that the Court vacate the challenged provision and set it aside, *see* Second Am. Compl. ¶¶ 81-83, 92, Prayer for Relief (a)-(d), but § 108(t) is now obsolete as a result of the publication of the November 2018 CPM, which eliminates the challenged provision.  *See Miles v. Moore*, Civ. No. 3:10-162, 2012 WL 4866561, at *4 (E.D. Va. Oct. 12, 2012) (revision to prison open enrollment policy "no longer poses any threat" to plaintiff's ability to attend religious service and mooting his request for declaratory and injunctive relief).  Under these circumstances, Plaintiffs' request for an order declaring § 108(t) unlawful, *see* Second Am. Compl. ¶¶ 81-83, 92, Prayer for Relief (a)-(d), amounts to a request for an impermissible "advisory opinion[] on [an] abstract proposition[] of law."  *Id.* at * 5; *see also, e.g., Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1114-15 (10th Cir. 2010) (concluding that court "can provide no effective relief" in response to environmental groups' request for declaratory relief is moot as a result of the agency's issuance of "a superseding [biological opinion] B.O." thus "creating a new regulatory context for assessing compliance with [the agency's] . . . [Endangered Species Act] ESA obligations).

The same is true with respect to Plaintiffs' request that the Court enjoin Defendants from "implementing and enforcing" § 108(t).  *See* Second Am. Compl. ¶¶ 81-83, 93, Prayer for Relief (e).

In late May 2018, OCR ceased "implementing and enforcing" (*i.e.*, using) § 108(t) as a basis for dismissing complaints. *See* Marcus Decl. ¶ 12(c), (e). And, in November, OCR published a new CPM, which supersedes the March 2018 CPM and, as relevant here, eliminates § 108(t) as one of the grounds for dismissing a complaint. *See* Marcus Decl. ¶¶ 13-15. Under these circumstances, Plaintiffs "would not benefit from any injunction" to [§ 108(t)]" because Defendants have already ceased (and in fact, eliminated) the very act that Plaintiffs seek to enjoin. *Miles*, 2012 WL 4866561at * 4.

Finally, OCR has informed the five (5) individuals whose roughly 700 complaints were dismissed under § 108(t) that it will open directed investigations into the allegations underlying their respective complaints, *see* Marcus Decl. ¶¶ 16-17; *see also* Wills Decl. ¶ 5(a)—the additional relief that Plaintiffs seek here, *see* Second Am. Compl. ¶¶ 83, 101, Prayer for Relief (f).[5] To be clear, Plaintiffs are not entitled to this type of mandatory injunction, which is available only for claims under § 706(1) of the APA, which seek to compel agency action unlawfully withheld. *See South Carolina v. United States*, 243 F. Supp. 3d 673, 683-84 (D.S.C. 2017) ("[T]he only action that can be compelled under the APA is action legally *required*" and such a claim may only be brought under § 706(1)") (emphasis in original) (internal quotation marks and citation omitted)). Plaintiffs do not allege a § 706(1) APA claim. *See generally* Second Am. Compl. ¶¶ 72-101. In any event, Counts I and II are moot. Where, as here, there is no longer any controversy between the parties regarding "the validity of [§ 108(t)]," Counts I and II have "'lost [their] character as a present, live controversy of the kind that must exist if [courts] are to avoid advisory opinions on abstract questions of law.'" *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982)(citation omitted). Accordingly, these two counts should be dismissed for lack of subject matter jurisdiction.

---

[5] *See also supra* at 1 n1.

**D. Plaintiffs cannot show that either exception to the mootness doctrine applies here.**

Plaintiffs cannot salvage Counts I and II by claiming that one of the two exceptions to the mootness doctrine, *i.e.*, "voluntary cessation" and "capable of repetition, yet evading review," applies here. A plaintiff may avoid a mootness determination by showing that although the defendant has voluntarily ceased the "allegedly illegal activity," *see Incumaa*, 507 F.3d at 288, it may nevertheless "'return to [its] old ways.'" *CREW*, 858 F. Supp. 2d at 61 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). However, the voluntary cessation exception does not apply if a defendant demonstrates that (1) "'there is no reasonable expectation that that wrong will be repeated,'" *see Incumaa*, 507 F.3d at 288 (internal citation omitted), and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). Moreover, courts are "less concern[ed] about the recurrence of objectionable behavior" where, as here, the defendant is a governmental entity. *See CREW*, 858 F. Supp. 2d at 61 (collecting cases); *see also Brown v. Buhman*, 822 F.3d 1151, 1167 (10th Cir. 2016) (observing that "government 'self-correction . . . provides a secure foundation for mootness as long as it seems genuine'" (internal quotation omitted)).

Here, prior to the filing of this lawsuit, OCR had ceased using § 108(t) as a basis for dismissing complaints in early May 2018. *See* Marcus Decl. ¶ 12(c). Thereafter, Defendants issued a new CPM. *See id.* ¶ 13. The (new) November 2018 CPM expressly supersedes the March 2018 CPM, and eliminates § 108(t) as a basis for dismissing complaints. *See id.* ¶ 15; *see also* Ex. D to Marcus Decl. Thus, there is no reasonable expectation that OCR will use § 108(t) as a basis for dismissing future complaints. *See, e.g.*, *CREW*, 858 F. Supp. 2d at 63 (rejecting plaintiff's attempt to avoid mootness finding based on plaintiff's conjecture about the "possible recurrence" of the Securities and Exchange Commission's use of alleged unlawful policy where "the SEC is a governmental entity" and the agency "abandon[ed] . . . its prior policy" and made "efforts to develop a new policy").

17

Not only should there be little concern about the "recurrence" of OCR's use of § 108(t), but as explained in detail above, "interim . . . events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631. As a result of the issuance of the November 2018 CPM, § 108(t) is no longer a ground for dismissing complaints. *See* Marcus Decl. ¶¶ 13-15. OCR has also (1) informed the five (5) individuals whose nearly 700 complaints were dismissed pursuant to § 108(t) that it will open directed investigations into the allegations underlying their respective complaints; *see id.* ¶ 16(a); *see also* Wills Decl. ¶ 5(a); and (2) stated its intention to send letters to the recipients that were named in the previously-dismissed complaints informing the recipients that OCR intends to open a directed investigations to determine whether the allegations in the complaints have been resolved. *See* Marcus Decl. ¶¶ 16(b)-(c), 18, 19; *see also* Wills Decl. ¶¶ 5(b)-(c), 6. To the latter point, since early December 2018, OCR has sent letters to over 200 recipients, informing these recipients that OCR will be opening directed investigations into the allegations raised in their complaints. *See id.* And, by April 2019, OCR will have informed the remaining recipients that the agency has open directed investigations. *See id.* For the five individuals whose roughly 700 complaints were previously dismissed under § 108(t), this is arguably more relief than they would otherwise be entitled under 34 C.F.R. 100.7.

Nor may Plaintiffs salvage Counts I and II by invoking the second exception to the mootness doctrine—the "capable of repetition, yet evading review" exception. As the Fourth Circuit has observed, absent a certified class action, this mootness exception "is limited to the 'exceptional situation[]' . . . in which '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Incumaa*, 507 F.3d at 289 (internal citations omitted). Counts I and II do not present such an "exceptional situation." As an initial matter, Counts I and II do not present the "inherently transitory claims that the Supreme Court has recognized as likely to evade

18

review." *ACLU of Mass.*, 705 F.3d at 57 (citing Supreme Court cases about elections, pregnancies, and temporary restraining orders) *see also Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011) (applying "capable of repetition, yet evade review" exception to the mootness doctrine to an "[e]lection-related dispute").   Moreover, as explained above, OCR ceased using § 108(t) as a basis for dismissing complaints in May 2018, and shortly thereafter issued the November 2018 CPM, which, *inter alia*, eliminates § 108(t) as a ground for dismissal.   These actions undermine any argument that Plaintiffs' complaints (or anyone else's) will be "subject to the same action again." *Incumaa*, 507 F.3d at 289.

Accordingly, for these reasons, Counts I and II are moot and should be dismissed for lack of subject matter jurisdiction.

### E.  Count III's procedural claim must be dismissed for lack of standing.

Plaintiffs' claim that Defendants violated the APA's procedural requirements by publishing the challenged provisions—§ 108(t) and the decision to eliminate the opportunity to appeal complaints dismissed for insufficient evidence— in the March 2018 CPM without notice and comment (Count III) fares no better.   The "[d]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Isntit.*, 555 U.S. 488, 496 (2009).   Put another way, "in the absence of a connection between a procedural violation and a concrete interest, a bare violation of the former does not manifest injury in fact." *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016).   This is precisely the flaw underlying Count III—Plaintiffs assert a procedural right without identifying an imminent threat of injury or harm as a result of the challenged provisions.

As explained above, OCR ceased using § 108(t) as a ground for dismissing complaints in early May 2018, and shortly thereafter, issued the November 2018 CPM, which expressly supersedes the March 2018 CPM and, among other changes, eliminates § 108(t) as a basis for dismissing complaints. In addition to eliminating § 108(t), OCR has informed those individuals whose complaints were

dismissed pursuant to § 108(t) that it "will open directed investigations" into the allegations in their respective previously-dismissed complaints, and has begun the process of notifying the recipients named in those complaints of the same. *See* Marcus Decl. ¶¶ 16-18; *see also* Wills Decl. ¶¶ 5-7.  As a result of the forgoing, Plaintiffs cannot demonstrate the existence of an injury in fact (or an imminent threat of future harm) sufficient to maintain their procedural challenge to the now-obsolete § 108(t).  *See, e.g.*, *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 14-15 (D.C. Cir. 2011) (plaintiff organization lacks standing to assert procedural challenge to EPA's waterway determination because it failed to allege either an injury in fact or a threat of future harm attributable to the challenged determination).

The same is true with respect to Plaintiffs' procedural challenge to the March 2018 CPM's elimination of the opportunity to appeal complaints dismissed for insufficient evidence.  As an initial matter, Plaintiffs' generalized allegation that they and their members have been "negatively impact[ed]" by their inability to appeal a complaint dismissed for insufficient evidence is not sufficiently "concrete or particularized" to support Article III standing, *see supra* at 8-12, let alone provide the requisite "concrete interest" to support their notice-and-comment claim.  *See Sierra Club v. EPA*, 754 F.3d 995, 1001-02 (D.C. Cir. 2014) (organization's "vague generalities" about diminished air quality "failed to establish that they will likely suffer a substantive injury" and for that reason "their claimed procedural injury—being denied the right to comment on the Memorandum—necessarily fails").  Nor is the absence of any identifiable concrete (or future) injury surprising given Plaintiffs' right to directly sue the recipients named in their complaints.  *See Cannon*, 441 U.S. at 677; *see also West v. Spelling*, 480 F. Supp. 2d 213, 217 (D.D.C. 2007) (dismissing plaintiff's APA suit against ED because plaintiff could directly sue the institution); *Cunningham v. Riley*, 98 F. Supp. 2d 554, 559-60 (D. De. 2000) (dismissing APA challenge against OCR because "[i]n processing and investigating plaintiff's complaint, OCR did not affect plaintiff's legal rights" because "[a]t all times, plaintiff was free to file [his § 504 Rehabilitation Act] suit against the [educational institution]").  Indeed, as explained in detail

below, it is Plaintiffs' ability to directly sue the recipients named in their complaints (dismissed or otherwise) that is fatal to the merits of their APA claims.

Accordingly, because Count III alleges a procedural right untethered to any actual or imminently threatened harm, *see Sierra Club*, 754 F.3d at 1001-02, Plaintiffs lack standing to bring this claim. *See Summers*, 555 U.S. at 496-97.

### III.     Counts I, II, and III Fail to State Claims Upon Which Relief May Be Granted.

Plaintiffs' Amended Complaint merits dismissal for the additional reason that Plaintiffs' APA claims fail as a matter of law because Plaintiffs and their members have an adequate remedy against the recipients named in their previously-dismissed complaints. *See* 5 U.S.C. § 704; *see also Wash. Legal Found. v. Alexander*, 984 F.2d 483, 486-87 (D.C. Cir. 1993).[6]   And, Count III fails to state a claim upon which relief may be granted for the added reason that the challenged provisions are rules of agency procedure exempt from the APA's notice and comment requirements.

### A. Plaintiffs have an adequate remedy against the recipients named in their complaints.

The APA authorizes judicial review of "agency action made reviewable by statute and for which there is no other adequate remedy in court."  5 U.S.C. § 704.  Thus, to state a claim under the APA, Plaintiffs must show, *inter alia*, that there is "no other adequate remedy in court."  *See id.* Plaintiffs cannot make this showing because they have an implied private right of action against the recipients named in their previously-dismissed complaints. *See, e.g., Wash. Legal Found.*, 984 F.2d at 486 (affirming dismissal of organization's and students' APA claim against ED seeking to compel that

---

[6] The existence of an adequate remedy under the APA is an elemental consideration of the APA's cause of action and thus dismissal based on this consideration is proper under Federal Rule of Civil Procedure 12(b)(6).  *See Clear Sky Car Wash LLC v. City of Chesapeake, Va.*, 743 F.3d 438, 445 (4th Cir. 2014); *see also Lee v. U.S. Citizenship & Immig. Servs.*, 592 F.3d 612, 618-19 (4th Cir. 2010) ("[T]he APA 'is not a jurisdiction-conferring statute'" but "simply provide[s] 'a limited cause of action for parties adversely affected by agency action.'" (internal citations omitted)).

agency to promulgate and enforce regulations under Title VI of the Civil Rights Act because plaintiffs "may pursue their actions under Title VI against their respective individual institutions" and thus have an "adequate remedy" that precludes review of their APA claim).

The focus of Plaintiffs' APA claims is their assertion that certain changes to the complaint processing rules in the March 2018 CPM, *i.e.*, § 108(t) and the elimination of the opportunity to appeal complaints that OCR dismissed for insufficient evidence, made it more difficult for Plaintiffs to file complaints with OCR that allege that recipients have violated federal discrimination laws such as Title VI and § 504. *See* Second Am. Compl. ¶¶ 42-45, 54-71. But courts have long held that direct suits alleging discrimination against educational institutions constitutes an adequate remedy that bars APA review of the enforcement and oversight work of the Department of Education. *See, e.g.*, *WEAL*, 906 F.2d at 745 (plaintiffs' implied right of action under Title VI against the specific institutions that had committed the alleged discrimination is "an adequate" remedy to redress discrimination and thus bars "a default remedy under the APA"); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191-92 (4th Cir. 1999) (rejecting organization's APA claim "to enforce Title VI supervisory duties against the federal agencies" because organization has an adequate remedy the entities receiving federal funding); *Wash. Legal Found.*, 948 F.2d at 483 ("[s]uits directly against the discriminating entities may be more arduous, and less effective in providing systemic relief" but nevertheless are "an adequate, even if imperfect remedy" barring APA review of the Department of Education's actions).

In reaching this determination, the Fourth Circuit and other courts have relied on the Supreme Court's decision in *Cannon*, 441 U.S. 677. In *Cannon*, the Supreme Court addressed whether Congress intended to create a private right of action under Title IX in favor of individuals injured by discriminatory practices directly against the discriminating educational institution. The Supreme Court answered this question in the affirmative and expressed skepticism that a similar private right of action exists against the federal government. *Id.* at 706-07 n.41, 715 (observing that Title IX "appears to

22

have been a compromise aimed at protecting individual rights without subjecting the Government to suits" and noting that suits against the federal agencies would be "disruptive" of agencies' "efforts to allocate [their] enforcement resources under Title IX").  As the Fourth Circuit observed in affirming the dismissal of APA claims against federal defendants, "*Cannon*'s direct remedy against funding recipients is not only 'adequate,' but, as the Supreme Court recognized, is preferable to a direct suit against the agency itself." *Jersey Heights Neighborhood*, 174 F.3d at 191-92 (quoting *Cannon*, 441 U.S. at 706-07 n.41).  So, too, it is here.

Plaintiffs and their members may directly sue the recipients that they allege have engaged in discriminatory conduct.  *See id.*  Under well-settled law, the existence of this implied right of action constitutes "an adequate remedy" that precludes review of Plaintiffs' APA claims against Defendants. *See id.*  Indeed, as the Eight Circuit has observed albeit in a different context, "OCR proceedings are neither necessary nor a condition-precedent to filing civil lawsuits.  The aggrieved party need not exhaust any remedies with the OCR, and he can file a lawsuit at any point in the OCR process.  Indeed, an aggrieved party can avoid the OCR entirely and proceed directly to federal court." *See Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co.*, 617 F.3d 1040, 1048 (8th Cir. 2010).  Accordingly, because Plaintiffs' have an adequate remedy against the recipients named in their complaints, Plaintiffs' APA claims fail to state a claim upon which relief may be granted against Defendants and should be dismissed on that basis.

### B. The elimination of the opportunity to appeal is not subject to the APA's notice and comment procedures.

Although § 553 of the APA generally requires federal agencies to provide the public with notice of a proposed rule and the opportunity to submit comments on it, *see* 5 U.S.C. § 553, the statute exempts from these requirements, *inter alia*, "rules of agency organization, procedure, or practice." *Id.* § 553(b)(3)(A).  This statutory exception for procedural rules "was provided to ensure that agencies retain latitude in organizing their internal operations." *Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77,

106-07 (D.D.C. 2013) (quoting *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980)).   Accordingly, a "'critical feature'" of a rule that falls into this procedural exception "'is that it covers agency actions that do not themselves alter the rights or interest of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency.'"  *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 280 (D.C. Cir. 2000) (internal citation omitted); *see also Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 349-50 (4th Cir. 2001) ("A rule fits within this exemption if it does not 'alter the rights or interests of parties.'") (quoting *JEM Broad. Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994)). It is for this reason that "[a] rule that simply prescribes 'the manner in which the parties present themselves or their viewpoints to the agency' does not alter the underlying rights interests of the parties.'"  *Nat'l Secs. Counselors*, 931 F. Supp. 2d at 106 (quoting *Batterton*, 648 F.2d at 694).   This assessment (*i.e.*, determining whether a challenged provision is a procedural rule) is "functional, not formal" requiring courts to "identify the substantive rights and interests that may be altered because not every interest so qualifies, since every change in rules will have some effect on those regulated." *Nat'l Sec. Counselors*, 931 F. Supp. 2d at 106-07 (internal quotation marks and citations omitted). Accordingly, courts have found that "agency rules that impose 'derivative,' 'incidental,' or 'mechanical' burdens upon regulated individuals are considered procedural, rather than substantive."  *Nat'l Sec. Counselors*, 931 F. Supp. 2d at 107 (internal citation omitted).   In the same vein, rules that do not alter "'the substantive standards'" by which the agency evaluates the regulated entity are also considered "procedural rules" not subject to the APA's procedural requirements.  *Inova Alexandria Hosp.*, 244 F.3d at 350 (quoting *JEM Broad Co.*, 22 F.3d at 327); *see Nat'l Sec. Counselors*, 931 F. Supp. 2d at 107 ("rules are generally considered procedural so long as they do not 'change the substantive standard by which the [agency] evaluates' applications which seek a benefit that the agency has the power to provide") (internal citation omitted).

24

Applying these principles here, it is clear that the elimination of the opportunity to appeal was a "rule of agency procedure" or "procedural rule" exempt from the APA's notice and comment requirements.   As an initial matter, the elimination of the opportunity to appeal simply delineated the manner in which Plaintiffs and complainants "present[ed] themselves or their viewpoints to" OCR by eliminating their need to appeal complaints dismissed by the agency for insufficient findings.   *See, e.g., Inova Alexandria Hosp.*, 244 F.3d at 349-50 (affirming dismissal of hospital's notice and comment challenge to a rule that permitted Provider Reimbursement Review Board to dismiss untimely appeals of Medicare reimbursement challenges, reasoning that the challenged provision "was a procedural rule for handling appeals" and did not alter the substantive standard applied to such challenges); *see also, e.g., Nat'l Sec. Counselors*, 931 F. Supp. 2d at 106-07 (concluding that, although potentially burdensome, agency's provision governing the FOIA fee structure imposed in connection with mandatory declassification review is a procedural rule that does not adversely affect "those interests ultimately at stake in the agency proceeding").

Perhaps more fundamentally, Plaintiffs have the right to directly sue the recipients named in their complaints and therefore the decision to eliminate the opportunity to appeal complaints dismissed for insufficient evidence does not alter this right or interest. *See Jersey Heights Neighborhood*, 174 F.3d at 191-92 (quoting *Cannon*, 441 U.S. at 706-07 n.41).   Indeed, Plaintiffs and others "can file a lawsuit at any point in the OCR process" or "avoid the OCR [process] entirely and proceed directly to federal court." *Capella Univ., Inc.*, 617 F.3d at 1048.   Thus, the challenged provision in the now-superseded March 2018 CPM were "the very sort of procedural measure[s]" that are exempt from the APA's procedural requirements. *James V. Hurson Assocs., Inc.*, 229 F.3d at 281.   Count III should be dismissed on this basis.

**CONCLUSION**

Based on the foregoing, Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction. Counts I and II are moot, and Plaintiffs lack standing to assert their procedural APA claim in Count III. If the Court concludes otherwise, Plaintiffs' APA claims fail as a matter of law because Plaintiffs have an adequate remedy against the recipients named in their previously- dismissed complaints. Count III also fails as a matter of law because the challenged (albeit now inoperative) provisions of the March 2018 CPM were rules of agency procedure and thus exempt from the APA's procedural requirements.

Dated:  February 11, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT K. HUR
United States Attorney

CARLOTTA WELLS
Assistant Branch Director

*/s/ Tamra T. Moore*
TAMRA T. MOORE  (D.C. Bar No.488392)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, Room 5375
Washington, DC 20001
Tel:   (202) 305-8648
Fax:   (202) 305-8517
E-mail: Tamra.Moore@usdoj.gov

Attorneys for Defendants