## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **The National Federation of the Blind**, et al.,     ) | |
|                                        ) | |
|        Plaintiffs,                ) | |
|                                        ) | |
|                v.                    ) | Case No. 1:18-cv-01568 |
|                                        ) | |
| **UNITED STATES OF AMERICA**, et al.,    ) | |
|                                        ) | |
|        Defendants.             ) | |

## DECLARATION OF KENNETH L. MARCUS

I, Kenneth L. Marcus, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Assistant Secretary for Civil Rights in the U.S. Department of Education (the Department), Office for Civil Rights (OCR), in Washington, D.C. I have held this position since June 25, 2018[1]. My current work address is 400 Maryland Avenue, SW, Washington, D.C. 20202.

2. I am aware of litigation against the Department in the above-referenced matter and am aware of the allegations in both Plaintiffs' Amended Complaint and their Second Amended Complaint.

3. I make this declaration on the basis of personal knowledge and information made available to me in the course of my official duties.

**Core Responsibilities of the Office for Civil Rights**

---

[1] I was confirmed by the Senate on June 7, 2018, but did not assume my duties until June 25th.

1

4.    OCR's core mission is to ensure equal access to education and to promote educational excellence throughout the nation through vigorous enforcement of civil rights.[2]

5.    OCR enforces several Federal civil rights laws that prohibit discrimination in programs or activities that receive Federal financial assistance from the Department (recipients). Discrimination on the basis of race, color, and national origin is prohibited by Title VI of the Civil Rights Act of 1964; sex discrimination is prohibited by Title IX of the Education Amendments of 1972; discrimination on the basis of disability is prohibited by Section 504 of the Rehabilitation Act of 1973; and age discrimination is prohibited by the Age Discrimination Act of 1975. OCR also shares responsibility with the Department of Justice for enforcement of Title II of the Americans with Disabilities Act of 1990 (prohibiting disability discrimination by public entities, whether or not they receive federal financial assistance). In addition, as of January 8, 2002, OCR enforces the Boy Scouts of America Equal Access Act (Section 7905 of the Elementary and Secondary Education Act of 1965, as amended by the Every Student Succeeds Act, 20 U.S.C. 8525.).

6.    OCR's primary activities include: (i) resolving complaints of discrimination filed by the public pursuant to 34 C.F.R. §100.7(b); (ii) conducting agency-initiated investigations, typically called compliance reviews or directed investigations, which permit OCR to target resources on matters that warrant OCR's attention, pursuant to 34 C.F.R. §100.7(a); (iii) monitoring recipients' adherence to resolution agreements reached with OCR; (iv) issuing regulations and policy guidance on the civil rights laws that OCR enforces; (v) answering stakeholder inquiries and responding to

---

[2] See U.S. Department of Education, About OCR, https://www2.ed.gov/about/offices/list/ocr/aboutocr.html

requests for information from and providing technical assistance to recipients and stakeholders; and (vi) administering and disseminating the Civil Rights Data Collection.

7.    OCR's technical assistance helps recipients achieve voluntary compliance with the civil rights laws that OCR enforces.  Among its approaches to providing technical assistance, OCR provides webinars and presentations to recipients, students, families, and other stakeholders, as well as answers individual questions about the laws that OCR enforces and how to comply with those laws.

8.    OCR employs nearly 600 employees in its headquarters and its 12 regional enforcement offices around the country.

9.    OCR's enforcement authority includes conducting: (i) complaint investigations, (ii) compliance reviews, and (iii) directed investigations, consistent with the civil rights statutes and implementing regulations at 34 C.F.R. §§100.6 - 100.11.

10.    The Case Processing Manual (CPM) is an internal document that sets forth the procedures for the evaluation, investigation, and resolution of complaints, and the initiation of periodic compliance reviews and directed investigations to ensure compliance with the civil rights laws and regulations enforced by OCR.

11.    As outlined in the CPM, the major steps that comprise OCR's enforcement authority include: (i) evaluating a complaint to determine if OCR has jurisdiction over the subject matter of the allegations; (ii) opening a complaint investigation, compliance review or directed investigation; (iii) case planning for the investigation, *e.g.*, determining the scope of the investigation, investigative methods, and resolution strategy; (iv) conducting the  investigation; (v) attempting voluntary resolution;  and

(vi) monitoring a resolution agreement or initiating enforcement action if a voluntary resolution cannot be reached.

**The March 5, 2018 CPM**

12.    I have been informed that the following occurred prior to my assuming the duties of Assistant Secretary:

a.    On March 5, 2018, OCR issued a revised CPM, superseding the February 2015 CPM.  Attached as Exhibits A and B hereto are true and correct copies of the superseded March 5, 2018 CPM and February 2015 CPM.

b.    According to OCR's Case Management System, between March 5, 2018, and May 9, 2018, OCR dismissed nearly 700 complaints filed by five (5) individuals alleging web accessibility issues for persons with disabilities pursuant to section 108(t)[3] of the March 5, 2018 CPM. One individual filed 662 of the web accessibility complaints dismissed under section 108(t).

c.    As of May 9, 2018, OCR ceased using section 108(t) as a basis for dismissing complaints.

d.    Between May and June 2018, OCR held three webinars on web accessibility for recipients to make their websites and online programs accessible to individuals with disabilities, to, *inter alia*, address the allegations raised in the web accessibility complaints previously dismissed under section 108(t).

---

[3] Section 108(t) provided that OCR will dismiss a complaint if "a complaint is a continuation of a pattern of complaints previously filed with OCR by an individual or group against multiple recipients or a complaint(s) is filed for the first time against multiple recipients that, viewed as a whole, places an unreasonable burden on OCR's resources. OCR may consider conducting a compliance review or providing technical assistance concerning the issues raised by the complaint."

    e.  OCR's Case Management System contains documents indicating that between May 2018 and June 11, 2018, OCR dismissed three website accessibility complaints pursuant to Section 108(k) because OCR had previously dismissed similar complaints against the same recipient under Section 108(t).

**Actions Taken Since June 25, 2018**

13.    On November 19, 2018, OCR issued a revised CPM, a*vailable at* [https://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.pdf](https://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.pdf)

14.    Attached as Exhibit D hereto is a true and correct copy of the November 19, 2018 CPM.

15.    The November 19, 2018 CPM supersedes the March 5, 2018 CPM. Among other changes, the November 2018 CPM eliminates the former section 108(t), replaces the former section 108(k) with 108(l)[4], and adds an appeals process at section 307.

16.    In November 2018, I directed OCR's Deputy Assistant Secretary for Enforcement to do the following:

    a.  Send letters to the complainants whose web accessibility complaints were dismissed because of section 108(t), explaining that OCR will be initiating a directed investigation into the allegations raised in their complaints, and that OCR has published a revised CPM;

    b.  Send letters to the recipients that were named in the web accessibility complaints dismissed because of 108(t), and attended one of the three webinars held in May and June 2018, informing each recipient that OCR will open a directed investigation in June 2019 to determine if the allegations in the complaints have been resolved; and

---

[4] Section 108(l) states that OCR will dismiss a complaint if a "complaint filed by the complainant or someone other than the complainant against the same recipient raises the same or similar allegation(s) based on the same operative facts that was previously dismissed or closed by OCR."

   c.  Send letters on a regular basis as soon as practicable and continuing for a few months thereafter to cohorts of approximately 115 recipients named in the web accessibility complaints dismissed because of section 108(t) that did not attend one of the three webinars held in May and June 2018, informing the recipients that OCR will initiate a directed investigation shortly thereafter to investigate the allegations raised in the dismissed complaints.

17.    Attached as Exhibit E hereto are true and correct copies of the letters sent to the five complainants as referenced in paragraph 16(a).

18.    Attached as Exhibit F hereto is a true and correct copy of the letter dated November 28, 2018, sent to the recipients that participated in one of OCR's webinars as referenced in paragraph 16(b).

19.    Attached as Exhibit G hereto is a true and correct copy of the letter that was sent to a recipient, dated December 6, 2018, that did not attend one of OCR's webinars as referenced in paragraph 16(c).

12 / 6 / 18
_____
Date

_____
Kenneth L. Marcus

6