# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| THE NATIONAL FEDERATION OF THE BLIND,<br>THE COUNSEL OF PARENT ATTORNEYS AND ADVOCATES, INC. and<br>NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, INC.,<br><br>      Plaintiffs,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION,<br>BETSY DEVOS, *Secretary of Education*, and<br>KENNETH L. MARCUS, *Assistant Secretary for Civil Rights*,<br><br>      Defendants. | Civil Action No. TDC-18-1568 |

## MEMORANDUM OPINION

Plaintiffs The National Federation of the Blind ("NFB"), The Council of Parent Attorneys and Advocates, Inc., ("COPAA"), and National Association for the Advancement of Colored People, Inc. ("NAACP") have filed this civil action challenging the March 5, 2018 issuance of a new United States Department of Education ("DOE"), Office for Civil Rights, Case Processing Manual ("the March 2018 Manual"), which allegedly eliminated certain substantive rights of complainants that the Office for Civil Rights is designed to protect. Plaintiffs assert three causes of action for injunctive and declaratory relief under the Administrative Procedure Act ("APA"): that the adoption of the March 2018 Manual was (1) arbitrary and capricious, 5 U.S.C. § 706(2)(A) (2012); (2) procedurally improper, 5 U.S.C. § 706(2)(D); and (3) not in accordance with law, 5

U.S.C. § 706(2)(C). Now pending before the Court is Defendants' Motion to Dismiss. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED, and the Amended Complaint will be DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

The mission of the DOE Office for Civil Rights ("OCR") is "to ensure equal access to education and to promote educational excellence through vigorous enforcement of civil rights in our nation's schools." Am. Compl. ¶ 2, ECF No. 38 (quoting https://www2.ed.gov/about/offices/list/ocr/aboutocr.html). OCR is responsible for enforcing certain civil rights statutes including Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d-2000d–7 (2012), which prohibits discrimination on the basis of race, color, or national origin by recipients of federal financial assistance, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (2012), which prohibits discrimination on the basis of disability by recipients of federal financial assistance. To fulfill its mission, OCR authorizes anyone who believes that an educational institution that receives federal financial assistance is discriminating on the basis of race, color, national origin, sex, disability, or age to file a complaint and have it reviewed by OCR. Certain types of complaints, including those alleging disparate impact discrimination on the basis of race, can be advanced only by the federal government.

In 2015, OCR issued a Case Processing Manual ("the 2015 Manual") which adopted "procedures to promptly and effectively investigate and resolve complaints, compliance reviews and directed investigations to ensure compliance with the civil rights laws enforced by OCR." Am. Compl. ¶ 46 (quoting the 2015 Manual). Then, on March 5, 2018, without providing notice or opportunity to comment, DOE issued a revised manual, the March 2018 Manual, which

superseded the 2015 Manual and contained new provisions requiring mandatory dismissal of certain complaints and eliminating the right of complainants to appeal determinations by OCR to the Enforcement Office Director.

On May 31, 2018, Plaintiffs filed the instant action asserting that the changes implemented through the March 2018 Manual violated the APA. Originally, Plaintiffs challenged three rule changes: (1) the automatic dismissal of any complaint of illegal discrimination if it is part of "a pattern" of complaints by an individual complainant against multiple recipients, contained in section 108(t) of the March 2018 Manual; (2) the automatic dismissal of any complaint against multiple recipients if OCR, in its sole judgment, determines that investigating that complaint would place an "unreasonable burden" on OCR's resources, also contained in section 108(t) of the March 2018 Manual; and (3) the elimination of complainants' right to appeal OCR findings of insufficient evidence.

At the time of the filing of the original Complaint, Plaintiffs alleged that they had suffered and continued to suffer the diversion of their resources to "identify, inform and advise their members about, and respond to Defendants' unlawful actions in adopting the challenged provisions of the [March] 2018 OCR Manual." Compl. ¶ 26, ECF No. 1. They also alleged that several of their members had filed complaints that had been dismissed or were subject to imminent dismissal pursuant to section 108(t), and that absent injunctive relief, they would continue to have to divert resources to navigating the new complaint requirements, and many of their members' complaints and appeals would be dismissed without an adequate remedy in an alternative forum.

On August 29, 2018, before any substantive proceedings had taken place, the Court held a case management conference at the parties' request, during which the parties sought additional time to determine whether they would be able to resolve this matter outside of litigation. The

request was premised, in part, on the fact that since the filing of the initial Complaint, Kenneth L. Marcus had been appointed as Assistant Secretary of Education for Civil Rights and had stated that he intended to revise the March 2018 Manual to delete section 108(t) and establish a new appeals process. On September 28, 2018, and again on November 5, 2018, the parties reported that they were engaged in productive settlement negotiations and requested a stay of all deadlines until November 19, 2018 to continue to work to resolve the case.

Then, on November 19, 2018, the parties notified the Court that settlement discussions had broken down when Defendants informed Plaintiffs' counsel that they were no longer willing to offer any stipulation or agreement to resolve the matter and instead planned to release a revised OCR Case Processing Manual later that day, which could render Plaintiffs' requests for relief moot. Indeed, effective November 19, 2018, DOE issued the new manual ("the November 2018 Manual"), which eliminated section 108(t) and reinstated an appeals process. The next day, Plaintiffs sought leave to file an Amended Complaint and a Motion for a Preliminary Injunction to add allegations that Defendants were also using section 108(k) of the March 2018 Manual to dismiss complaints on the basis that a similar complaint filed by another individual had been previously dismissed pursuant to section 108(t).

On November 29, 2018, the Court held another case management conference, during which the parties vigorously disputed whether the case was moot in light of the issuance of the November 2018 Manual. The Court granted Plaintiffs leave to file an Amended Complaint and a Motion for a Preliminary Injunction and also granted Defendants leave to file a Motion to Dismiss. Plaintiffs ultimately notified the Court that they did not intend to file a Motion for a Preliminary Injunction after all.

On December 3, 2018, Plaintiffs filed the operative Amended Complaint. The only substantive change to the Amended Complaint was the addition of a challenge to section 108(k) of the March 2018 Manual. Section 108(k) requires the dismissal of a complaint if filed by any complainant against the same recipient, raising the same or similar allegations based on the same operative facts, that were made in an earlier complaint previously dismissed based on section 108(t). Plaintiffs challenge section 108(k) only to the extent that it perpetuates dismissals on the basis of section 108(t).

Notably, Plaintiffs do not mention the issuance of the November 2018 Manual in their Amended Complaint. The Amended Complaint also does not amend or supplement any of Plaintiffs' allegations relating to standing in light of the issuance of the November 2018 Manual. Rather, it asserts three separate but related challenges to the adoption of the March 2018 Manual, specifically, the inclusion of section 108(t) and section 108(k) to the extent it relies on section 108(t), and the deletion of a provision for appeals of OCR determinations. Count I alleges that the adoption of the March 2018 Manual was not in accordance with law, in violation of 5 U.S.C. § 706(2)(C). Count II alleges that the adoption of the March 2018 Manual was arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A). Count III alleges that the adoption of the March 2018 Manual, including the provision rescinding the appeals process, was procedurally improper because it was issued without fulfilling the notice and comment requirements of the APA, in violation of 5 U.S.C. § 706(2)(D).

## DISCUSSION

In their Motion, Defendants assert that: (1) Plaintiffs lack standing under the operative Amended Complaint; (2) Counts I and II of the Complaint are moot; (3) Plaintiffs have an adequate private remedy against the recipients of federal funding named in their OCR complaints such that

the DOE is not subject to suit under the APA; and (4) the elimination of the opportunity to appeal is a rule of agency practice or procedure not subject to the APA's notice and comment requirement. The first two arguments are jurisdictional and brought pursuant to Federal Rule of Civil Procedure 12(b)(1); the second two arguments are non-jurisdictional and brought pursuant to Rule 12(b)(6). Because the Court finds that Plaintiffs' allegations in the Amended Complaint are insufficient to establish standing, it cannot and does not address Defendants' non-jurisdictional arguments for dismissal.

## I.    Legal Standard

Defendants' arguments that Plaintiffs lack standing and that certain claims are moot are governed by Federal Rule of Civil Procedure 12(b)(1) because a plaintiff's personal stake in the litigation—standing—and the existence of a live case or controversy—mootness—are elements of subject matter jurisdiction. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (stating that "the Constitution's case-or-controversy limitation on federal judicial authority, Art. III, §2, underpins both our standing and our mootness jurisprudence"). The plaintiff has the burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). Rule 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to make that showing. When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for

summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192. The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

## II.    Standing

Plaintiffs pursue two theories of standing:  organizational standing and associational standing.  Under either theory, a plaintiff establishes standing by demonstrating (1) a "concrete and particularized" injury that is "actual or imminent," (2) "fairly traceable to the challenged conduct," (3) and "likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013); *Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 428 (4th Cir. 2007).  For organizational standing, the organization suffers an injury-in-fact when "a defendant's actions impede its efforts to carry out its mission." *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012).  For associational standing, an organization must demonstrate that (1) one or more of its members would have standing to sue as an individual; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992) (stating that a single member with standing in his or her own right is sufficient to establish that an organization has standing).

Standing must be established for each claim. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). The presence of one plaintiff with standing renders a claim justiciable. *Bostic v. Schaefer*, 760 F.3d 352, 370-71 (4th Cir. 2014).  For claims involving a statutory cause of action,

a plaintiff must also have interests that fall within the "zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014). Finally, and particularly important here, standing is evaluated at the time the operative complaint was filed, which in this case was December 3, 2018, the date of the Amended Complaint. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) (holding that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction"); *see also Young v. City of Mount Rainier*, 238 F.3d 567, 571 (4th Cir. 2001) (stating that "an amended pleading ordinarily supersedes the original and renders it of no legal effect"); *Daniels v. Arcade, L.P.*, 477 F. App'x 125, 130-31 (4th Cir. 2012) (evaluating standing based on the amended complaint, not the original complaint).

Defendants raise two arguments for why Plaintiffs lack standing through either organizational standing or associational standing. First, they argue that at no point in the case have Plaintiffs alleged a sufficiently concrete and particularized injury, such that Plaintiffs never had standing to bring this lawsuit and no amendment could cure that deficiency. Second, they assert that even if Plaintiffs have alleged a cognizable past injury, by the time of the filing of the Amended Complaint, in light of the rescission of the challenged provisions of the March 2018 Manual, such past injury is not redressable through injunctive or declaratory relief. Under this argument, Defendants contend that Plaintiffs effectively gave up their standing by amending their Complaint after the March 2018 Manual was replaced by the November 2018 Manual and failing to allege any new, ongoing, or imminent injuries under the newly enacted regulatory regime. As discussed below, the Court agrees with the second but not the first argument.

## A. Concrete and Particularized Injury

The Amended Complaint sufficiently alleges a concrete and particularized injury fairly traceable to the challenged conduct under both theories of organizational standing and associational standing. For direct organizational injury, an "organization must allege that discrete programmatic concerns are being directly and adversely affected" by the challenged action, *see National Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995), as opposed to that there has merely been a diversion of resources based on the "organization's own budgetary choices," *see Lane*, 703 F.3d at 675. Defendants argue that Plaintiffs have alleged only an abstract "interest in 'seeing' the law obeyed or a social goal furthered," which does not constitute a sufficiently discrete injury to establish organizational standing. *Nat'l Taxpayers Union*, 68 F.3d at 1433. Plaintiffs respond that, as alleged in the Amended Complaint, each of their organizations' missions include equal access to education, and central to their missions is that each maintains a regular practice of filing complaints with OCR on behalf of members or others who have been deprived of educational opportunities based on, as relevant here, vision impairment, disability, race, or ethnicity. Specifically, NFB's mission is "the complete integration of blind individuals into society on a basis of equality." Am. Compl. ¶ 9. To further this mission, NFB regularly files OCR complaints on behalf of its members "to ensure that the blind receive equal access to the opportunities, facilities, services, programs and activities offered by public schools, institutions of higher education, and other recipients of federal financial assistance from DOE." *Id.* COPAA is a national organization of parents of children with disabilities, their attorneys, and their advocates, whose mission is to secure appropriate educational services for children with disabilities. To further this mission, "COPAA frequently advises and trains parents, attorneys, and advocates about filing complaints with the DOE OCR" and "helps parents and advocates file administrative

9

complaints on behalf of children with disabilities." *Id.* ¶ 13. Finally, the NAACP's mission is to "ensure the political, educational, social, and economic equality of rights of all persons and to eliminate race-based discrimination." *Id.* ¶ 18. To do so, the NAACP and its state and local units file OCR complaints regularly and educate their members about laws and regulations relevant to equal educational opportunity.

To further each of these missions, after OCR implemented the challenged provisions of the March 2018 Manual, Plaintiffs expended resources to "identify, inform and advise their members about, and respond to Defendants' unlawful actions." *Id.* ¶ 26. Specifically, Plaintiffs allege that each organization was forced to go above and beyond its normal activities to reach out to and assist members whose OCR complaints or appeals might be dismissed under the March 2018 Manual in order to ensure that each member's claim was still investigated and resolved, at least in some forum. The NAACP has asserted that the identified provisions of the March 2018 Manual would require it to expend resources to retrain its state and local units on how to file complaints with OCR, how to prevent meritorious cases from being dismissed, and how to find alternative, more workable mechanisms to address discrimination outside of the OCR process. Likewise, after the issuance of the March 2018 Manual, COPAA expended resources to update its training materials, to retrain members, and to alter its recommendations and advice on the efficacy of an OCR complaint, which required additional expenditures on staff and diverted resources from direct assistance to members. Through such activities, the organizations have expended time and resources that they otherwise could have dedicated to their other efforts to secure equal access to education.

Such efforts are distinct from those of the plaintiffs in *National Taxpayers Union* and *Lane*, the two cases primarily relied upon by Defendants. Unlike in *National Taxpayers Union*, Plaintiffs

here allege that they have engaged in activities, and thus expended resources, beyond those "normally expended to review, challenge, and educate the public" about policy changes. *Nat'l Taxpayers Union*, 68 F.3d at 1434. Plaintiffs are not merely in the business of advising the public about potential changes in the law; rather, they affirmatively engage in advising specific members on whether and how to file an OCR complaint and in fact file such complaints in their own names and on behalf of their members. As discussed above, additional resources had to be expended to enable them to properly advise specific members about their complaints or potential complaints. Plaintiffs also had to make the same adjustments to their own complaint-filing processes, since under DOE regulations, Plaintiffs are permitted to and regularly do file complaints against educational institutions that are engaging in discrimination.

In *Lane*, an organization challenging a federal restriction on interstate transfers of handguns simply alleged that its "resources [were] taxed by inquiries into the operation and consequences of interstate handgun transfer provisions." *Lane,* 703 F.3d at 675. Although the court held that an injury to an organization generally does not arise from a decision to expend resources on member education or litigation in response to legislation or policy action, *see id.*, Plaintiffs are not asserting that their injury consists of the cost of this lawsuit or general member education about the March 2018 Manual. Rather, this case is more akin to *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), in which the United States Supreme Court had held that an apartment complex owner's racial steering practices had "perceptibly impaired" the fair housing organization plaintiff's "ability to provide counseling and referral services for low- and moderate-income homeseekers." *Id.* at 379; *see Lane*, 703 F.3d at 674-75 (distinguishing *Havens*). Like the fair housing organization in *Havens*, Plaintiffs have alleged a need to expend more resources than usual to assist their members in a specific fashion that is core to their mission of advancing equal access to

education, and have asserted that it will be more burdensome to do so because the March 2018 Manual creates additional obstacles to a successful OCR complaint, to the point that Plaintiffs must consider advising members on more expensive alternative complaint mechanisms such as federal lawsuits. *See Havens*, 455 U.S. at 379; *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 284 F. Supp. 3d 758, 771 (D. Md. 2018) (holding in a case involving the proposed rescission of the Deferred Action for Childhood Arrivals ("DACA") program that "[t]he fact that one of their primary functions has been assisting their members with tens of thousands of DACA initial renewal applications is sufficient for standing in and of itself") *rev'd in part on other grounds*, 924 F.3d 684 (4th Cir. 2019). Thus, Plaintiffs have organizational standing on Counts I and II, which allege that the issuance of the March 2018 Manual was arbitrary and capricious and contrary to law, in violation of the APA.

As for Count III, alleging that the March 2018 Manual was issued without compliance with the procedural requirement of allowing for notice-and-comment rulemaking, Plaintiffs have alleged more than a mere "procedural right *in vacuo*" untethered to a concrete injury. *Summers v. Earth Island Instit.*, 555 U.S. 488, 496 (2009). Deprivation of a procedural right—in this case, the right of the Plaintiff organizations to submit comments on the March 2018 Manual prior to its adoption—can constitute an injury for purposes of standing when it is tied to a specific resultant harm. *See id.* at 496-97. As detailed above, the specific resultant harm alleged by Plaintiffs is not merely the dismissal of their members' complaints, but also the diversion of resources by the Plaintiff organizations to assist their members under the March 2018 Manual's regime. Had Plaintiffs been permitted to participate in a notice-and-comment process, they may have been able to prevent OCR from enacting the challenged provisions of the March 2018 Manual such that they would not have had to engage in such costly and time-consuming efforts.

Under these circumstances, the Court finds that Plaintiffs have adequately alleged that they suffered a concrete and particularized injury in the form of a diversion of resources and frustration of their mission in the time period after the March 2018 Manual was adopted and implemented but before the November 2018 Manual was adopted. *See Havens*, 455 U.S. at 379. This injury is traceable to Defendants because, had they not adopted the March 2018 Manual, Plaintiffs would not have suffered this injury.

For purposes of associational standing, at least NFB and COPAA have identified specific members who suffered or were at risk of suffering a concrete and particularized injury while the March 2018 Manual was in effect but before the November 2018 Manual was enacted. For example, the Amended Complaint identifies two NFB members, Joy and Paul Orton, who filed a complaint with OCR in 2016 on behalf of their child, which was then resolved through an OCR resolution agreement. In 2018, the Ortons' child suffered another instance of discrimination, and the Ortons had to file another OCR complaint, which was at risk of dismissal under the March 2018 Manual's "provision requiring dismissal of complaints by individuals who have filed previously." Am. Compl. ¶ 11. Similarly, the Amended Complaint alleges that OCR complaints filed by COPAA member Katie Kelly, an attorney for students with disabilities, were subject to dismissal under the March 2018 Manual. The Amended Complaint also states that several COPAA members complaints were actually dismissed and appeals denied pursuant to the March 2018 Manual. The Declaration of Denise Marshall, Executive Director of COPAA, specifically identifies one of these members as Marcie Lipsitt, who had over 600 of her complaints dismissed on the basis of the March 2018 Manual.

These complaint dismissals are more than just a procedural injury because Plaintiffs' members cannot simply re-file their complaints in federal court. Mark Riccobono, the President

of NFB, explains that the OCR complaint process "presents a faster and lower-cost option to filing complaints in federal court," and most of NFB's members "cannot afford to hire an attorney and pay out-of-pocket for the fees and expenses of litigation." Riccobono Decl. ¶ 14, ECF No. 50-1. Even those members who can afford to litigate their complaints in federal court face higher costs of doing so, which is a cognizable injury. In two comparable cases in which NFB was involved, the one filed with OCR cost just over $70,000 and the one filed in federal court cost over $400,000.

Where the present case, which challenges the provisions of the March 2018 Manual under the APA, plainly does not require the participation of these specific members, *see Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 187 (4th Cir. 2007), the Court finds that at least NFB and COPAA have sufficiently alleged associational standing because one or more of their members suffered a concrete and particularized injury during the time period after the March 2018 Manual was adopted.

**B.    Redressability**

Although they have shown a concrete and particularized injury, Plaintiffs have failed to plead sufficient facts to establish the third requirement for standing, a likelihood that the injury can be redressed by a favorable ruling providing injunctive or declaratory relief. *See Comite de Apoyo a los Trabajadores Agricolas (CATA) v. U.S. Dep't of Labor*, 995 F.2d 510, 513 (4th Cir. 1993) ("By itself, a declaratory judgment cannot be the redress that satisfies the third standing prong. Rather, plaintiffs must identify some further concrete relief that will likely result from the declaratory judgment."). In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the Supreme Court held that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 102. In *Lyons*, the plaintiff, who had been subjected to a chokehold by the police during a traffic

14

stop, sought damages and an injunction barring the police from using the same type of chokehold in the future. *Id.* at 105. The Court held that Lyons had standing to seek damages, but that he had failed to demonstrate that an injunction would redress his past injury where there was no finding that he "faced a real and immediate threat of again being illegally choked," where choking under the circumstances present at the time of the past incident was not permitted by police department policy. *Id.* at 105-106, 110. The United States Court of Appeals for the Fourth Circuit reached a similar conclusion in a class action by a group of patients at a hospital operated by the United States Department of Veterans Affairs, finding that patients who had their information compromised due to a data breach in the past lacked standing to seek a broad injunction under the APA ordering the hospital to comply with the safeguards of the Privacy Act because there was no imminent threat that their information would be compromised again in the future. *See Beck v. McDonald*, 848 F.3d 262, 277-78 (4th Cir. 2017). In another case, the United States Court of Appeals for the Second Circuit found that a nonprofit organization challenging a law against possession of a certain kind of knife lacked standing to seek declaratory and injunctive relief where it had alleged only a past diversion of resources in response to the challenged practice but no ongoing risk of injury. *See Knife Rights, Inc. v. Vance*, 802 F.3d 377, 388-89 (2d Cir. 2015).

Here, in asserting organizational standing, Plaintiffs have alleged only injuries premised on the applicability of the March 2018 Manual. Even in the declarations attached to their memorandum in opposition to the Motion ("Opposition"), the leaders of each Plaintiff organization describe the harm in this manner: "[T]he changes to the March 2018 [Manual], as articulated in the Amended Complaint, caused and, if they remained in effect or were reinstated, would continue to cause harm to the NFB to our members." Riccobono Decl. ¶ 9; *see also* Goode Decl. ¶ 14, ECF No. 50-2; Marshall Decl. ¶ 12, ECF No. 50-3. However, as of the date of the Amended Complaint,

December 3, 2018, the March 2018 Manual and its challenged provisions were no longer in effect. Where Plaintiffs have not alleged in the Amended Complaint any ongoing injury that remains despite the rescission of the March 2018 Manual, or any new injury arising from the November 2018 Manual, the operative complaint requests prospective relief for past injuries only and provides no specific allegations that there is an imminent risk of the reinstatement of the March 2018 Manual. Such a risk is neither stated in the Amended Complaint nor supported with any factual allegations. In the absence of any particularized factual allegations establishing a likelihood of reinstatement of the challenged provisions, or ongoing injury arising from the now rescinded March 2018 Manual, this risk is too speculative to confer standing to seek injunctive and declaratory relief. *See Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991) (finding that a plaintiff lacked standing to seek an injunction against future adverse employment actions that were not likely to recur where his record had been expunged and he had since been reassigned).

The Court likewise finds that Plaintiffs' claim of associational standing fails on the redressability prong. In the Amended Complaint, Plaintiffs allege facts supporting the conclusion that specific members' complaints were at risk of dismissal because of the provisions of the March 2018 Manual. For example, while the March 2018 Manual was in effect, NFB members Joy and Paul Orton had filed a second complaint against their child's school district that was subject to dismissal under section 108(t). An imminent injury is sufficient to confer standing. *See Lujan*, 504 U.S. at 560. However, once Plaintiffs filed their Amended Complaint, the Ortons' injury— which had yet to occur—was no longer imminent because the March 2018 Manual was no longer in effect. Although Plaintiffs have also alleged that certain members of COPAA actually had their OCR complaints or appeals dismissed as a result of the March 2018 Manual, they have not asserted in the Amended Complaint how the injury arising from such dismissals is redressable by an

16

injection setting aside the March 2018 Manual when it is no longer in effect. In fact, the Amended Complaint provides no allegations stating whether and how the rescinded March 2018 Manual continues to have ongoing negative effects on such members with dismissed complaints or appeals, nor does it explain how a prospective injunction would remedy such negative effects, given that OCR has formally rescinded the policy which harmed them.

That is not to say, however, that no redressable injury could be plausibly alleged. In their Opposition, Plaintiffs assert that Defendants have not demonstrated that their actions since the filing of this lawsuit have fully addressed the alleged violations. For example, they argue that the "directed investigations" that OCR has committed to open based on complaints dismissed pursuant to section 108(t) have not yet occurred and do not appear to be nearly as robust as the complaint-initiated investigations to which these institutions would have been subject had the complaints not been dismissed. Moreover, they assert that under the November 2018 Manual, there is still a provision, now found at section 108(l), that mirrors section 108(k) and does not purport to limit the ability of OCR to dismiss complaints based on past dismissals under section 108(t) of the March 2018 Manual, even though section 108(t) is no longer in effect. Finally, they note that Defendants have not taken any action to reinstate appeals dismissed pursuant to the March 2018 Manual. Because Plaintiffs have identified facts that, if properly alleged, may establish that they continue to suffer an injury such that their claims are redressable through an injunction, the Court will dismiss the Amended Complaint for lack of standing without prejudice.

## III. Mootness

The Court also addresses Defendants' argument that Counts I and II of the Amended Complaint are moot, as this argument is also jurisdictional, and a finding of mootness would mean that any amendment to Plaintiffs' standing allegations would be futile because jurisdiction would still be lacking, at least as to Counts I and II.

17

Article III of the Constitution limits the judicial power of the federal courts to actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "When a case or controversy ceases to exist, the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015). A "case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (quoting *Knox v. Serv. Emps.*, 132 S. Ct. 2277, 2287 (2012)). Voluntary cessation of a challenged practice does not necessarily render a case moot. *Friends of the Earth*, 528 U.S. at 189. The "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* (internal alterations omitted). For this reason, "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Id.* at 190; *see also Lyons*, 461 U.S. at 101, 109-110 (holding both that the plaintiff's allegations of imminent injury based on past harm was too speculative to confer standing to seek injunctive relief and that a citywide moratorium on police chokeholds did not moot an otherwise valid claim for injunctive relief because the moratorium was not permanent). This is one such case.

Defendants argue that the rescission of section 108(t) through the issuance of the November 2018 Manual, along with other actions they have taken to address the complaints dismissed under the challenged provisions of the March 2018 Manual, render this case moot. Upon the issuance of the November 2018 Manual, DOE did not formally reinstate all appeals or complaints dismissed under section 108(t) or 108(k). Rather, to address the dismissal of complaints under section 108(t) and 108(k), Defendant Marcus and Randolph Wills, Deputy Assistant Secretary of Education for

Enforcement, stated in declarations that OCR has sent or will send letters to all complainants whose complaints were dismissed based on section 108(t) or 108(k) (pursuant to a prior 108(t) dismissal) between March 5, 2018 and November 19, 2018, as well as to the recipients of those complaints, informing them that OCR would be initiating a "directed investigation" into the allegations by June 2019. As of April 26, 2019, some, but not all, of those directed investigations had been opened. To date, Defendants have not advised the Court whether those additional directed investigations were actually opened. Wills further stated that OCR will advise the complainants whose complaints were dismissed pursuant to sections 108(t) and 108(k) of the resolution of each of the directed investigations. If OCR finds insufficient evidence of a violation after those directed investigations, those specific complainants will be permitted to file new complaints against the same recipients.

According to Plaintiffs, these actions are insufficient to remedy prior dismissals pursuant to section 108(t) and section 108(k). First, Plaintiffs note that a statement in a letter that an investigation will be opened is different than an actual investigation, and there is no evidence in the record that directed investigations have actually been opened on all complaints dismissed under sections 108(t) and 108(k). Moreover, a review of the November 2018 Manual, currently in effect, reveals that the "directed investigations" promised in OCR's letters may not be the equivalent of a complaint-initiated investigation. The November 2018 Manual provides approximately 20 pages of procedures for complaint-initiated investigations, which require notice to and consent from the complainant, deadlines for acceptance of a resolution and negotiations, requirements for resolution letters and official findings by the agency communicated to the complainant and recipient, enforcement action procedures, and appeals. Directed investigations are covered by two paragraphs in the November 2018 Manual, which states in part:

A directed investigation is an OCR-initiated process that allows OCR to address possible discrimination that is not currently being addressed through OCR's complaint compliance review or technical assistance activities. Depending on the circumstances, a directed investigation may include offering technical assistance to the recipient, and/or conducting an expedited investigation that may result in a resolution agreement that will ensure that recipients come into compliance with the requirements of the civil rights laws and regulations enforced by OCR.

November 2018 Manual § 402, Marcus Decl. Ex. D, ECF No. 49-5. Thus, the claim by Deputy

Assistant Secretary Wills that "these directed investigations are similar to complaint investigations

in that the investigation and resolution options and procedures identified in the CPM for addressing

complaints are also utilized for directed investigations" does not appear to be correct. Wills Supp.

Decl. ¶ 9, ECF No. 56-1. Whether they mirror or approximate a complaint-initiated investigation

is entirely in the discretion of the agency. *See id.* Notably, none of Defendants' declarations

promise that the directed investigations into recipients who were the subjects of dismissed

complaints will actually incorporate the same procedures as those required for complaint-initiated

investigations.

Further, although Deputy Assistant Secretary Wills has committed that section 108(l) of

the November 2018 Manual will not be used to bar a complainant whose complaint was dismissed

pursuant to 108(t), reinvestigated through a directed investigation, and found to lack sufficient

supporting evidence from refiling a formal complaint against the same recipient, that commitment

leaves a notable gap. DOE has not committed that pursuant to section 108(l), a prior section 108(t)

dismissal under the March 2018 Manual will not be used to bar a new complaint against the same

recipient if filed by a different complainant. Indeed, section 108(l), like its predecessor section

108(k), sweeps more broadly and requires automatic dismissal of a "complaint filed by the

complainant *or someone other than the complainant* against the same recipient [which] raises the

same or similar allegations(s) based on the same operative facts that was previously dismissed or

closed by OCR." November 2018 Manual § 108(l) (emphasis added). Thus, where a complaint dismissed under section 108(t) of the March 2018 Manual can still result in the dismissal of a later filed complaint, the impact of that provision endures.

In summary, the replacement of the March 2018 Manual with the November 2018 Manual has not eliminated all adverse effects. Defendants have not established that complaints dismissed under section 108(t) or section 108(k) of the March 2018 Manual have been fully reinstated; rather, they are being subjected to a different, less robust investigative process which, to date, may or may not have been initiated for each such complaint. Dismissals under section 108(t) may still form the basis for a dismissal under section 108(l) of the November 2018 Manual. Finally, Defendants notably have not asserted mootness as to Count III, the only count which addresses the dismissal of appeals under the March 2018 Manual, likely because there is no evidence that any remedial action has been or will be taken to reinstate appeals dismissed under the March 2018 Manual. Thus, the Court finds that Plaintiffs' claims, including those relating to section 108(t) and 108(k) of the March 2018 Manual, are not moot. Accordingly, the Court need not address whether Defendants have, by replacing the March 2018 Manual with the November 2018 Manual, rendered the case moot by having "made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014) (quoting *Friends of the Earth*, 528 U.S. at 189).

The Court therefore finds that although Plaintiffs have not adequately alleged a redressable injury for purposes of organizational or associational standing, this case is not moot. *Friends of the Earth*, 528 U.S. at 190.

## IV.    Failure to State a Claim

Because the Court presently lacks jurisdiction over this case for lack of standing, it cannot and does not address Defendants' other arguments for dismissal. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (holding that a federal court may not hypothesize subject matter jurisdiction for purposes of deciding the merits); *Ex Parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

Because the Court finds that Plaintiffs' lack of standing is a pleading deficiency that could plausibly be cured, the Court will dismiss the Amended Complaint without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED. The Amended Complaint will be DISMISSED WITHOUT PREJUDICE. Any Motion for Leave to Amend the Complaint must be filed within 14 days of the date of this Order.

Date:  August 19, 2019

THEODORE D. CHUANG
United States District Judge